[Civ. No. 41105. First Dist., Div. Four. June 7, 1978.]

JOE B. RITCHEY, Plaintiff and Appellant, v.
VILLA NUEVA CONDOMINIUM ASSOCIATION et al.,
Defendants and Respondents.

**COUNSEL**

Joe B. Ritchey, in pro. per., for Plaintiff and Appellant.

Grunsky, Pybrum, Skemp & Ebey and James S. Farrar for Defendants and Respondents.

**OPINION**

**CALDECOTT, J.**—This is an appeal from a judgment entered pursuant to an order granting summary judgment in favor of defendants and respondents Villa Nueva Condominium Association[1] (hereinafter respondents) and against plaintiff and appellant Joe B. Ritchey (hereinafter appellant).

On July 30, 1973, appellant purchased a two-bedroom unit in the high-rise portion of the Villa Nueva Condominium project. As an owner of a condominium, appellant automatically became a member of the Villa Nueva Condominium Owners Association.[2] He likewise became subject to the provisions of the "Enabling Declaration Establishing a Plan for Condominium Ownership," the bylaws, and decisions and resolutions of the association.[3]

---

[1] The other defendants are the members of and the board of directors of the association.

[2] The association of owners, acting through its elected board of directors is responsible for administering the project, approving the annual budget, establishing and collecting monthly assessments, and arranging for the management of the project.

[3] The Enabling Declaration Establishing a Plan for Condominium Ownership provides: "7. That each owner, tenant or occupant of a 'family unit' shall comply with the

In 1974, the board of directors submitted proposed bylaw amendments to the Department of Housing and Urban Development (hereinafter HUD). The proposed amendments would, inter alia, add a new article XI to the bylaws which would set forth requirements for the renting and selling of individual units in the project by the owners. These proposals included a limitation on occupancy in the high-rise portion of the condominium project to persons 18 years of age or older where the occupancy would involve a period of 14 days or more. On November 8, 1974, HUD approved the proposed amendments. That same day, notice was sent to all condominium owners that the proposed changes in the bylaws would be voted upon at an association meeting on November 20, 1974.

At the November 20 meeting, the amendment restricting occupancy in the high-rise portion of the project to persons 18 years of age and over was approved by 75.864 percent of the owners representing the total value of all units in the project.[4] Appellant voted by proxy against the proposed restriction on occupancy.

In 1975, appellant leased his condominium to Dorothy Westphal, a woman with two children. On October 7, 1975, the association brought suit against appellant and Westphal seeking to remove Westphal from her occupancy of unit number 34. The action was based upon the bylaw

---

provisions of this Declaration, the By-Laws, decisions and resolutions of the Association or its representative, and the Regulatory Agreement, as lawfully amended from time to time, and failure to comply with any such provisions, decisions or resolutions, shall be grounds for an action to recover sums due, for damages, or for injunctive relief."

All agreements and determinations lawfully made by the association pursuant to Civil Code section 1350 et seq., the declaration or the bylaws are binding on all owners of family units, and their successors and assignees.

Article I, section 2 of the bylaws provides:

"Section 2. *By-Laws Applicability.* The provisions of these By-Laws are applicable to the project and its occupants. (The term 'project' as used herein shall include the land.)"

Article I, section 3 of the bylaws provides:

"Section 3. *Personal Application.* All present or future owners, tenants, future tenants, or their employees, or any other person that might use the facilities of the project in any manner, are subject to the regulations set forth in these By-Laws and to the Regulatory Agreement, attached as Exhibit 'C' to the recorded Plan of Apartment Ownership.

"The mere acquisition or rental of any of the family units (hereinafter referred to as 'Units') of the project or the mere act of occupancy of any of said units will signify that these By-Laws and the provisions of the Regulatory Agreement are accepted, ratified, and will be complied with."

[4]The bylaws provide that the bylaws can be amended with the approval of owners representing at least 75 percent of the total value of all units in the project as shown in the enabling declaration establishing a plan for condominium ownership.

restricting occupancy in the high-rise portion of the project to persons 18 years of age and older. Westphal moved out before an answer could be filed. The complaint was subsequently dismissed.

On November 13, 1975, appellant commenced the present action on behalf of himself and Dorothy Westphal. The complaint sought injunctive and declaratory relief, as well as damages for malicious prosecution, abuse of process and interference with a contractual relationship.

Subsequently, appellant moved for partial summary judgment. The motion was denied.[5] Appellant filed a second motion for partial summary judgment. The motion was denied without hearing on the ground that it had previously been heard and denied.

Appellant filed a third motion for partial summary judgment. Respondents countered, by filing a motion for summary judgment. The motions came on for hearing and the court denied appellant's motion and granted respondents' motion. Judgment in favor of respondents was entered that same day.

The appeal is from the judgment.

## I

Appellant challenges the validity of an amendment to the bylaws of the Villa Nueva Condominium project which restricts occupancy in the high-rise portion of the project to persons 18 years of age and older.[6] Appellant contends that such an age restriction is per se unreasonable. In addition, he argues that under the circumstances of the present case, the occupancy restriction cannot reasonably be enforced against him.

Appellant urges that an age restriction is patently unreasonable in that it discriminates against families with children. Age restrictions in condominium documents have not been specifically tested in our courts. Nevertheless, we conclude on the basis of statutory and case authority that such restrictions are not per se unreasonable.

---

[5]Appellant did not request, in his notice to prepare clerk's transcript, the inclusion of any documents filed by him in support of his first motion for summary judgment.

[6]Article XI, section 3, of the bylaws provides as follows: "Occupancy in the High Rise portion of the project shall be limited to persons 18 years of age or older. The term occupancy refers to a continuous occupancy for a period of 14 days or more."

In *Flowers* v. *John Burnham & Co.* (1971) 21 Cal.App.3d 700 [98 Cal.Rptr. 644], an apartment house restriction limiting tenancy to adults, female children of all ages, and male children under the age of five was held not to violate the Unruh Act guaranteeing equal access to "accommodations, advantages, facilities privileges, or services in all business establishments of every kind whatsoever." (Civ. Code, § 51, see § 52.) The court noted that arbitrary discrimination by a landlord is prohibited by the act, but held: "Because the independence, mischievousness, boisterousness and rowdyism of children vary by age and sex . . . [the defendant], as landlord, seeks to limit the children in its apartments to girls of all ages and boys under five. Regulating tenants' ages and sex to that extent is not unreasonable or arbitrary." (21 Cal.App.3d at p. 703.)

Similarly, in *Riley* v. *Stoves* (1974) 22 Ariz.App. 223 [526 P.2d 747], the Arizona Court of Appeals upheld a covenant in a deed restricting occupancy of a subdivision to persons 21 years of age or older: "The restriction flatly prevents children from living in the mobile home subdivision. The obvious purpose is to create a quiet, peaceful neighborhood by eliminating noise associated with children at play or otherwise. . . .

"We do not think the restriction is in any way arbitrary. It effectively insures that only working or retired adults will reside on the lots. It does much to eliminate the noise and distractions caused by children. We find it reasonably related to a legitimate purpose and therefore decline to hold that its enforcement violated defendants' rights to equal protection." (526 P.2d at pp. 752-753; cited with approval in *Coquina Club, Inc.* v. *Mantz* (Fla.App. 1977) 342 So.2d 112, 113-114.)

It should also be noted that the United States Congress has adopted several programs to provide housing for the elderly (see generally 12 U.S.C. § 1701 et seq.; 42 U.S.C. § 1485), setting an age minimum of 62 years for occupancy. (12 U.S.C. § 1701q(d)(4); 42 U.S.C. § 1485(d)(3).) As the *Riley* court observed, "These sections represent an implicit legislative finding that not only do older adults need inexpensive housing, but also that their housing interests and needs differ from families with children." (526 P.2d at p. 753. Cf. *Retail Clerks U., Local 770* v. *Retail Clerks Int. Ass'n.* (C.D.Cal. 1973) 359 F.Supp. 1285 [age is a valid criterion for establishing mandatory retirement].)

 Under Civil Code section 1355, reasonable amendments to restrictions relating to a condominium project are binding upon every

owner and every condominium in that project "whether the burdens thereon are increased or decreased thereby, and whether the owner of each and every condominium consents thereto or not."[7] Whether an amendment is reasonable depends upon the circumstances of the particular case. (See *Riley* v. *Stoves, supra,* 526 P.2d at p. 752.)

■ The amendment to the bylaws here in issue operates both as a restraint upon the owner's right of alienation, and as a limitation upon his right of occupancy. However, for the reasons hereinafter discussed, we conclude that under the facts of this case the amendment is reasonable. For the sake of simplicity, we will address each of these aspects of the amendment independently.

## *The Restraint Upon Alienation*

Article IX of the bylaws expressly provides that, to the extent that the bylaws conflict with applicable federal and state statutes and regulations, the provisions of such statutes or regulations will apply. This provision is in accordance with the general rule that all applicable laws in existence when an agreement is made necessarily enter into the contract and form part of it. (*Alpha Beta Food Markets* v. *Retail Clerk's* (1955) 45 Cal.2d 764, 771 [291 P.2d 433].)

Title 10 of the Administrative Code, section 2792.25, provides that restrictions in the bylaws may limit the right of an owner to sell or lease his condominium unit so long as the standards are uniform and objective, and are not based upon the race, creed, color, national origin or sex of the purchaser or lessee. (Cal. Admin. Code, tit. 10, § 2792.25, subd. (a).)[8] It

---

[7]Civil Code section 1355 provides in relevant part as follows: "The owner of a project shall, prior to conveyance of any condominium therein, record a declaration of restrictions relating to such project, which restrictions shall be enforceable equitable servitudes where reasonable, and shall inure to and bind all owners of condominiums in the project. Such servitudes, unless otherwise provided, may be enforced by any owner of a condominium in the project, and may provide, among other things: ... [¶] (c) For amendments of such restrictions which amendments, if reasonable and made upon vote or consent of not less than a majority in interest of the owners in the project given after reasonable notice, shall be binding upon every owner and every condominium subject thereto whether the burdens thereon are increased or decreased thereby, and whether the owner of each and every condominium consents thereto or not."

[8]Title 10 of the Administrative Code, section 2792.25, subdivision (a) provides as follows: "(a) Any provision which purports to restrict or abridge whether directly or indirectly, the right of an owner to sell or lease his subdivision interest must include uniform, objective standards for invoking the restriction upon sale or lease, none of which shall be based upon the race, color, creed, national origin or sex of the vendee or lessee."

thus appears that a restriction upon alienation can be based upon the age of the vendee or lessee, or his family. (See 4 Miller & Starr, Current Law of Cal. Real Estate (rev. 1977) § 24:14(1), p. 34, fn. 3.)

Moreover, subdivision (b) of section 2792.25, in effect, merely converts the restriction upon alienation to a right of first refusal. That subdivision provides that such a restriction shall be deemed waived if the association fails to procure an equally favorable offer, or make such an offer on its own behalf, within 15 days after receipt of notice of the owner's intent to accept an offer by a person who does not meet the prescribed standards.[9] It is generally recognized that a right of first refusal requiring merely that the property be offered to a designated party, but not binding upon the owner to sell at a predetermined price, is a reasonable restraint. (15A Am.Jur.2d, Condominiums, Etc., § 40, p. 870.) The bylaw is therefore a reasonable restriction upon an owner's right to sell or lease his condominium unit to families with children.

## The Limitation Upon Occupancy

Appellant purchased his condominium unit approximately 16 months prior to the enactment of article XI, section 3, of the bylaws. At that time, the enabling declaration establishing a plan for condominium ownership, the model form of subscription and purchase agreement, and the report to the public issued by HUD, consistently referred to units in the condominium project as "family home units" or "family units" located in "multi-family structures," and emphasized their suitability for families

---

[9]Subdivision (b) of section 2792.25 of title 10 of the Administrative Code provides as follows:

"(b) (1) If the owner gives notice to the Association of the terms of a bona fide offer by a person who does not meet the prescribed standards and of his intention to accept the offer, the Association may have a period of not to exceed 15 days after receipt of the notice to procure or to make an offer on terms not less favorable to the owner than the terms of the offer of the person failing to meet the prescribed standards.

"(2) If the Association does not procure an offer or make an offer on its own behalf within 15 days after receipt of the aforesaid notice, the restrictions shall be deemed waived and the owner may thereafter sell to any person provided that the terms of sale are not less favorable to him than the terms of the original offer which failed to meet the prescribed standards."

It should be noted that subdivision (b)(2) refers only to the owner's right to *sell* after waiver by the association. However, when construed together with subdivisions (a) and (b)(1) of section 2792.25, it is apparent that it was also intended to apply to restraints on the right of an owner to lease his unit.

with children.[10] Appellant states that he relied upon these representations when he purchased his unit.

Appellant, however, does not claim that any of these representations were false or were made to mislead him. As far as the record shows, appellant, at the time of his purchase and for several months thereafter, could lease the premises to a person with children under 18 years of age. Furthermore, appellant does not contend that it was represented to him that the conditions of occupancy would not be changed. In fact, at the time of his purchase, the enabling declaration specifically provided that the bylaws could be amended, and that he would be subject to any reasonable amendment that was properly adopted. Thus, the amendment is reasonable.

## II

Appellant claims that, as a condition of his federally insured loan for the purchase of his condominium, he was required to certify that he would not discriminate against families with children in leasing or selling his family unit. He argues that, since the association was created by the federal government, it is bound by his promise to the federal government not to discriminate against families with children.

Appellant raised this point in his declaration in opposition to respondents' motion for summary judgment and in his declaration in support of his second and third motions for summary judgment. However, he did not attach a copy of his loan agreement with the federal government to any of these declarations. Respondents therefore attack the sufficiency of the declarations with respect to this issue on the ground that they were not properly documented.

■ A motion for summary judgment requires supporting and opposing affidavits or declarations, which "shall be made by any person on

---

[10]The subscription and purchase agreement declared: "Churches, schools, shopping centers, playgrounds and other community facilities available to members of the project are located as follows: Various religious denominations are represented in City of Santa Cruz or surrounding area. Santa Cruz city schools include elementary, junior high and high schools—bus service. Also University of California, Santa Cruz Branch and Cabrillo College. Shopping—local is ½ block—major 1 block—city park adjacent—community facilities 2 to 4 blocks." In its report to the public, HUD stated: "The County Government Center, Library, City Hall Complex, Civic Auditorium, Post Office, Schools, Churches and the Ocean Beach Resort are all within walking distance." The report further described the project as having "a fenced tot play area." In addition, the report stressed that the condominium owner is assured of occupancy.

personal knowledge, shall set forth *admissible* evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." (Code Civ. Proc., § 437c; italics added.) Generally, averments in the affidavit or declaration which depend upon written documentation are incompetent and cannot be considered unless there are annexed thereto the original document or certified or authenticated copies of such instruments, or unless excuse for nonproduction is shown. (*Dugar* v. *Happy Tiger Records, Inc.* (1974) 41 Cal.App.3d 811, 815-816 [116 Cal.Rptr. 412].)

As appellant failed to attach essential documents to his supporting and opposing declarations, those declarations are insufficient to raise a triable issue of fact on the question of his promise to the federal government not to discriminate against families with children.

## III

Appellant contends that the association exceeded the scope of its authority in enacting an age restriction on occupancy. He argues that the association was established for the sole purpose of operating and maintaining the common areas and facilities of the condominium project, and that any attempt to limit or prescribe the use of the individually owned units was ultra vires. This argument is without merit.

The authority of a condominium association necessarily includes the power to issue reasonable regulations governing an owner's use of his unit in order to prevent activities which might prove annoying to the general residents. Thus, an owner's association can prohibit any activity or conduct that could constitute a nuisance, regulate the disposition of refuse, provide for the maintenance and repair of interiors of apartments as well as exteriors, and prohibit or regulate the keeping of pets. (15A Am.Jur.2d, *supra*, § 31, p. 861; § 40, p. 869. Cf. *Hidden Harbour Estates, Inc.* v. *Norman* (Fla.App. 1975) 309 So.2d 180 [rule prohibiting alcoholic beverages in the clubhouse adjacent common areas is valid and enforceable]; *Forest Park Cooperative* v. *Hellman* (1956) 2 Misc.2d 183 [152 N.Y.S.2d 685] [rule prohibiting separate washing machines in the respective apartments of a cooperative development is not arbitrary or unreasonable and is within the scope of authority of the directors of the development].)

Therefore, a reasonable restriction upon occupancy of the individually owned units of a condominium project is not beyond the scope of authority of the owner's association.

## IV

Appellant raises additional issues for the first time in his reply brief. Since good reason has not been shown for appellant's failure to present them in his opening brief, they should not be considered on this appeal. (*Hibernia Sav. and Loan Soc.* v. *Farnham* (1908) 153 Cal. 578, 584 [96 P. 9]; 6 Witkin, California Procedure (2d ed. 1971) Appeal, § 442, p. 4405.)

The judgment is affirmed.

Rattigan, J., and Christian, J., concurred.

A petition for a rehearing was denied June 28, 1978.