[No. B075289. Second Dist., Div. Six. July 15, 1994.]

RANCHO SANTA PAULA MOBILEHOME PARK, LTD., Plaintiff and Respondent, v.
BARBARA J. EVANS et al., Defendants and Appellants.

COUNSEL

Richard A. Weinstock, Channel Counties Legal Services Association, Andrew Koenig, Robert K. Miller, M. Carmen Ramirez, Grant R. Specht and Barbara Macri-Ortiz for Defendants and Appellants.

Crosby & Stanton and Bruce E. Stanton as Amici Curiae on behalf of Defendants and Appellants.

Swanson & Dowdall, Swanson & Gieser and Jim P. Mahacek for Plaintiff and Respondent.

Biddle & Hamilton and W. Craig Biddle as Amici Curiae on behalf of Plaintiff and Respondent.

OPINION

SCHOENBERG, J.*—Can a mobilehome park owner prohibit a mobilehome owner from subleasing his mobilehome? We hold that the parties can validly agree to the restriction, but that a rule prohibiting all subleasing imposed by the park owner without the homeowner's consent is not a reasonable park rule and is therefore unenforceable as to the homeowner and her tenant.

FACTS

Appellant, Barbara Evans, is the owner of a mobilehome situated in Rancho Santa Paula Mobilehome Park. In 1987, Evans and her now deceased husband purchased the mobilehome and rented space in respondent park. Evans has never resided in the mobilehome. Evans's stepdaughter resided in the mobilehome until February 1992, when she was forced by illness to vacate. Since March 1992, Evans has listed the mobilehome for sale but has not found a buyer. From March through June 1992, the mobilehome remained unoccupied. On June 28, 1992, Evans leased her

---

*Judge of the Municipal Court for the Los Angeles Judicial District sitting under assignment by the Chairperson of the Judicial Council.

mobilehome to appellant Dolores Erb. Erb remains a tenant in the mobile-home subject to vacating should Evans sell the mobilehome.

On July 27, 1992,[1] respondent distributed amended park rules to the homeowners. The amended rules contained the following provision: "1. RESTRICTIONS ON USE: [¶] . . . [¶] C. No person may regularly occupy or reside in a mobilehome unless at least one person is at least fifty-five (55) years of age and that person will regularly reside in and occupy the mobile-home on a full-time basis at all times in the future. *That person must also appear on the registration as a registered owner of the home.* All other persons who will regularly reside in and occupy the mobilehome must be at least eighteen (18) years of age or older." (Italics added.) The sentence italicized above requiring one resident to be a registered owner was a change from rules previously in effect.

After notifying appellants of the alleged violation of the above regulation and unsuccessful attempts to resolve the situation amicably, respondent petitioned for and obtained an injunction pursuant to Civil Code section 798.88 prohibiting appellant Evans from "permitting an unlawful occupant to reside in her mobilehome" and prohibiting appellant Erb from residing in the mobilehome "without the written consent" of the mobilehome park.

## DISCUSSION

Civil Code section 798.88 provides that ". . . any person in violation of a *reasonable* rule or regulation of a mobilehome park may be enjoined from the violation . . . ." (Italics added.) Appellants contend that, since the rule is unreasonable, respondent is not entitled to injunctive relief. A parallel argument is that a park rule restricting subleasing is an *unreasonable* re-straint upon alienation and therefore unenforceable. We must determine the reasonableness of the restriction as it applies to appellants in this case. Our inquiry focuses upon Civil Code section 711, dealing with restraints on alienation, upon cases involving similar restrictions, and upon the Mobile-home Residency Law.[2]

### I.

Civil Code section 711 provides: "Conditions restraining alienation, when repugnant to the interest created, are void." Several California cases have

---

[1]The rules state they were distributed June 27. However, the parties stipulated the correct date to be July 27, 1992.

[2]Civil Code sections 798-798.88.

interpreted the section with regard to assignments and leases, but none with regard to mobilehome subleases.[3]

In *City of Oceanside* v. *McKenna* (1989) 215 Cal.App.3d 1420 [264 Cal.Rptr. 275], the court upheld the prospective enforcement of restrictions similar to ours in a publicly subsidized condominium project. The court stated: "Reasonable restrictions on alienation have been held consistent with Civil Code section 711. ' "The day has long since passed when the rule in California was that all restraints on alienation were unlawful under the statute; it is now the settled law in this jurisdiction that only unreasonable restraints on alienation are invalid." [Citation.]' [Citation.] [¶] In determining whether a restraint on alienation is unreasonable, the court must balance the justification for the restriction against the quantum of the restraint. The greater the restraint, the stronger the justification must be to support it. [Citation.]" (*Id.* at p. 1427.)

The court pointed out that the restriction in that case furthered the state policy of providing housing for low and moderate income persons, and that the owner purchased the condominium with at least "constructive notice of the restriction on leasing and the requirement of owner occupancy." (*City of Oceanside* v. *McKenna, supra*, 215 Cal.App.3d 1420, 1429.)

The *Oceanside* court concluded that the restriction on renting was not per se unreasonable, that what is reasonable depends on the particular circumstances of the case, and that where such a restriction is in force at the time of purchase and is part of the purchase agreement, subsequent enforcement of the restriction prohibiting rental is reasonable.

In *Laguna Royale Owners Assn.* v. *Darger* (1981) 119 Cal.App.3d 670 [174 Cal.Rptr. 136], the court held that where a condominium association's agreement with a condominium owner prohibited transfer of a condominium without the prior approval of the association, the association was prohibited from *unreasonably* withholding consent to a transfer.

The court stated: "We reject [the] Association's contention that its right to give or withhold approval or consent is absolute. We likewise reject defendants' contention that the claimed right to approve or disapprove transfers is an invalid restraint on alienation because it is repugnant to the conveyance of a fee. We hold that in exercising its power to approve or disapprove transfers or assignments [the] Association must act reasonably . . . ." (*Laguna Royale Owners Assn.* v. *Darger, supra*, 119 Cal.App.3d 670, 680.)

---

[3]For simplicity, we use the term "mobilehome sublease" to indicate what amounts to a lease of the mobilehome and a sublease of the mobilehome park site.

The court noted the difference between a lessor/lessee relationship and that of a group of condominium owners, all members of the association, stating that ". . . it is essential to successful condominium living and the maintenance of the value of these increasingly significant property interests that the owners as a group have the authority to regulate reasonably the use and alienation of the condominiums." (*Laguna Royale Owners Assn.* v. *Darger, supra,* 119 Cal.App.3d 670, 682.) The court went on to apply a standard of reasonableness to the application of the restriction and held that withholding approval of a transfer to a timeshare arrangement was unreasonable.

*Ritchey* v. *Villa Nueva Condominium Assn.* (1978) 81 Cal.App.3d 688 [146 Cal.Rptr. 695, 100 A.L.R.3d 231], concerned a situation somewhat similar to ours. Ritchey purchased a condominium, subjecting him to the association's bylaws. Subsequent to the purchase, the association adopted bylaws restricting occupancy to persons 18 years of age and over. Rejecting Ritchey's claim that this unreasonably prevented him from leasing to a person with minor children, the court noted that "[w]hether an amendment is reasonable depends upon the circumstances of the particular case." (*Id.* at p. 694.) The court found the restriction reasonable, since Ritchey purchased subject to the association's rules which were in turn subject to change only by approval of three-fourths of the condominium owners, and since the restriction upon alienation was in fact only a right of first refusal. This was because section 2792.25, subdivision (b) of the former California Administrative Code provided that the restriction would be deemed waived unless the association procured an equally favorable offer. (81 Cal.App.3d at p. 695.)

The *Ritchey* case held a partial restriction on leasing (to persons with children under 18) to be reasonable even when the provision was enacted subsequent to the would-be lessor's purchase. Although there the court held a restriction somewhat similar to ours retroactively enforceable against a condominium owner, that case differs from ours in three significant aspects: First, the regulation there was far less restrictive, prohibiting only residency by children rather than prohibiting all subleasing as in our case. Second, the regulation was adopted by vote of more than 75 percent of the ownership based on total value of all the units in the project. There is a significant difference between submitting oneself to the future wishes of a community of which one is a part and in which one shares a general community of interest, and of being subject to future regulations imposed by a park owner who may or may not have goals in accord with homeowners and residents. Finally, and most importantly, as the *Ritchey* court was careful to point out, the restriction there was actually only a right of first refusal. The association

had a period of 15 days to match the owner's agreement; otherwise the restriction was waived. Hence, the restriction in *Ritchey* was of no economic significance to the homeowner.

In 1978, the Legislature enacted the Mobilehome Residency Law (MRL). Part of the law states: "The Legislature finds and declares that, because of the high cost of moving mobilehomes, the potential for damage resulting therefrom, the requirements relating to the installation of mobilehomes, and the cost of landscaping or lot preparation, it is necessary that the owners of mobilehomes occupied within mobilehome parks be provided with the unique protection from actual or constructive eviction afforded by the provisions of this chapter." (Civ. Code § 798.55, subd. (a).)

The MRL prohibits park management from evicting or refusing to renew a lease except for certain specified reasons. (Civ. Code, § 798.55, subd. (b).) One such reason is: "Failure of the homeowner or resident to comply with a reasonable rule or regulation of the park which is part of the rental agreement or any amendment thereto." (Civ. Code, § 798.56, subd. (d).)

Civil Code section 798.88 provides management with an additional and less severe remedy for a violation of park rules. The section states: "(a) In addition to any right . . . to terminate the tenancy of a homeowner, any person in violation of a reasonable rule or regulation of a mobilehome park may be enjoined from the violation . . . [¶] . . . [¶] (d) . . . [i]f the court, by clear and convincing evidence, finds the existence of a continuing or recurring violation of a reasonable rule or regulation of the mobilehome park . . . ."

Civil Code section 798.25, subdivision (b) provides that a park rule may be amended without a homeowner's consent upon six months' written notice except for regulations applicable to recreation facilities which require only sixty days' notice.[4]

Civil Code section 798.33 subdivision (b) states: "If the management of a mobilehome park implements a rule or regulation prohibiting residents from keeping pets in the park, the new rule or regulation shall not apply to prohibit the residents from continuing to keep the pets currently in the park if the pet otherwise conforms with the previous park rules or regulations relating to pets. However, if the pet dies or no longer lives with the resident, the resident does not have the right to replace the pet."

---

[4]The section has been amended to also require a meeting and consultation with the homeowners prior to amending the rules.

Although the MRL states no policy toward subleasing,[5] we find in the MRL the expression of a policy similar to that for condominiums. Because of the high cost of moving mobilehomes, they are anything but mobile. A mobilehome owner who finds living in a particular park impractical or otherwise infeasible faces the alternatives of selling or renting the home. As is discussed above, the MRL, in order to protect the mobilehome owner, prohibits the park management from evicting a homeowner or refusing to renew a lease except for specified reasons. Thus the MRL gives the home-owner a potential qualified life estate in the park.[6]

Included in the reasons for eviction is the violation of a "reasonable rule or regulation of the park which is part of the rental agreement or any amendment thereto." (Civ. Code, § 798.56, subd. (d).) Park management can also enforce compliance with regulations by utilizing the lesser remedy of injunction pursuant to Civil Code section 798.88. That section does not state that the rule must have been part of the rental agreement, but does state that the rule must be reasonable. We note that one purpose of the MRL is to protect the homeowner from "actual or constructive eviction." (Civ. Code, § 798.55.) Although the MRL permits management to amend park rules and regulations without the consent of the homeowners (Civ. Code, § 798.25), such rules must be reasonable to be enforceable.

Rules and regulations for mobilehome parks can affect various uses. They may regulate and restrict parking, noise, use of common area facilities, trash dumping and the like. A homeowner may expect such rules to change as

---

[5]In fact, in 1993 the Legislature expressly eschewed stating a policy. Civil Code section 798.23 states that the section "shall not affect in any way, either to validate or invalidate, nor does this section express a legislative policy judgment in favor of or against, the enforcement of a park rule or regulation which prohibits or restricts the subletting of a mobilehome park space by a tenant." Arguably, the failure to state a policy, coupled with a provision subjecting a tenant to reasonable rule changes after commencement of the tenancy upon six months' notice indicates an intention to protect the homeowner from change for the six-month period only. Civil Code section 798.33, concerning pets, indicates that the Legislature was aware of ways to protect the homeowner for a longer period if it wished to. The problem with this argument is that it can just as easily be turned on its head. The Legislature, we presume, is also aware of the case law involving condominiums. Furthermore, it demonstrated its ability to express a policy *favoring* restrictions in commercial subleasing by enacting legislation explicitly overturning the policy expressed by the California Supreme Court in *Kendall* v. *Ernest Pestana, Inc.* (1985) 40 Cal.3d 488 [220 Cal.Rptr. 818, 709 P.2d 837]. (See Civ. Code, § 1995.270.)

[6]Civil Code section 798.56 lists the seven prerequisites for termination or refusing to renew a lease. Five of these are for violations by the homeowner or resident. The others are for condemnation or change of use of the park.

conditions change.[7] However, a rule prohibiting subleasing goes to the very heart of ownership and residency. Because of the home's immobility, an owner who finds living in the park no longer desirable, practical, or possible, would be forced to either sell his home or leave it vacant.

■ In accord with *City of Oceanside* v. *McKenna, supra,* 215 Cal.App.3d 1420, we employ a balancing test to determine the validity of the restriction. Here, no evidence was offered justifying the "no-sublease" provision. However, we note that there are obvious advantages to the community in having such a restriction. An owner, especially because of the impracticality of moving a mobilehome, is more likely to be a long-term resident, and is therefore more likely to have a greater interest not only in maintaining the premises, but in maintaining the park as a whole. We see no reason why parties should not be allowed to freely agree to such a provision.

In providing for the lesser remedy of injunctive relief for violations of rules enacted subsequent to the commencement of a tenancy, the MRL recognizes changing conditions may require new regulations governing relatively minor uses of the property. However, as explained above, a rule prohibiting subleasing affects the very nature of the holding and may well cause the eviction of both the tenant and the mobilehome owner. We hold that such a rule, when applied retroactively—that is, against a homeowner whose lease contains no such restriction and who has not agreed to the restriction—is contrary to the stated purpose of the MRL and is therefore unreasonable.

## II

Respondent claims that the regulation he seeks to enforce does not prohibit subleasing, but only requires the owner to be one of the residents of the mobilehome. However, the restriction would permit subleasing only if the home remained unoccupied or if the homeowner were one of the occupants. The restriction is broader than a no-sublease clause in that it also prohibits a noncommercial arrangement in which persons other than the homeowner are the sole occupants of the home. Nevertheless, it is essentially a prohibition of subleasing.

## III

Respondent contends that the restriction did not operate retroactively because it was incorporated by law into the original lease. It argues that,

---

[7]Apparently aware of the hardship on pet owners caused by a change in policy prohibiting animals, the Legislature provided for nonretroactivity. Civil Code section 798.33 states that a rule prohibiting pets shall not apply to pets in the park before the rule came into effect.

since Civil Code section 798.25 permits the making of new rules without the homeowner's consent, the homeowner in commencing the tenancy agrees to subsequently enacted rules. However, the argument begs the question. To be valid and enforceable, the rule must be *reasonable*. A homeowner could not be expected to foresee a rule change effecting such a radical change in such an important condition of his tenancy. Insofar as it attempts to operate retroactively, such a rule is not reasonable.

### IV

■ Respondent contends that appellants should not be permitted to raise the issue of retroactivity of the rules because it was not argued in the trial court.

In its verified petition for injunctive relief, respondent asserted that it had published the following rule: "At all times, one of the persons that is a lawful tenant, must be the 'legal' or 'registered' owner of the mobilehome and that person must regularly occupy the mobilehome." Respondent alleged that, "at all relevant times," Evans knew of the rules. In her verified answer, Evans denied this.

At the injunction hearing, respondent's attorney brought to the court's attention that the amendment requiring homeowner occupancy occurred in June of 1992 and became effective December 31, 1992. The court stated, "Isn't there an ex post facto with that, changing the rule after somebody is in?" Later in the hearing, appellants' attorney explained that he had requested but never received the park rules and was therefore unaware of what the prior rules were. Still later the court inquired of appellants' attorney, "And do you think that [the question of reasonableness] is impacted in any way by the fact that [Evans] is already in there, that she agreed to the term when she bought the unit?"

Appellants' attorney responded: "Well, again, that is a little hazy as far as I am concerned, because I haven't gotten a copy of the park rules and regulations when she moved in and all the amendments since then. [¶] It's my understanding that this latest amendment Miss Evans hasn't signed. And I agree under the Mobile Home Residency Act, there can be changes made after the fact. But in reality, it's basically take it or leave it. It is not really a negotiated term and it is imposed on the mobile home coach owner."

Respondent's attorney then produced both the rules distributed in July 1992 and those in effect before then. Although the July 1992 rules contained a provision similar to the one alleged in the petition, the prior rules contained no requirement of owner occupancy.

From the foregoing, we find the issue was adequately raised in the court below. The delay in raising the issue was the result of respondent's timing in producing the rules.

## V

■ Respondent contends that appellants were not prejudiced by the July 1992 change in the rules because the prior rules already prohibited subleasing. Respondent cites the following rule: "B. The mobilehome and space shall be used only for private residential purposes, and no business or commercial activity of any nature shall be conducted thereon. This prohibition applies to any commercial or business activity, including, but not limited to, any activity requiring the issuance of a business license or permit by any government agency, and the leasing, subleasing, sale or exchange of mobilehomes. Garage sales, yard sales, moving sales or auctions are not permitted. Baby sitting services may not be conducted in the Park."

Respondent stresses the second sentence: "This prohibition applies to . . . subleasing . . . ." However, the paragraph must be read as a whole. In doing so, we find that the prohibition in the second sentence relates, not to any subleasing of the mobilehome space, but to carrying on the business of subleasing on the mobilehome premises. Were we to adopt respondent's meaning, we would have to conclude that the rule also prohibited the sale of a mobilehome. That would be contrary to the MRL. (Civ. Code, §§ 798.70-798.79.)

## VI

Since we reverse for the reasons heretofore cited, we need not address appellants' other contentions.

The judgment is reversed. Appellants to recover costs.

Stone (S. J.), P. J., concurred.

YEGAN, J.—I respectfully dissent. While the parties, the trial court, and the majority put various interpretations on what is at stake, I believe the issue is straightforward: Can a mobilehome park owner adopt a rule which has the effect of precluding subleasing? The answer is "yes."

The Legislature has apparently elected not to treat the issue of subleasing in the otherwise comprehensive Mobilehome Residency Law. (Civ. Code,

§ 798 et seq.)[1] Section 798.23 provides that the owners of mobilehome parks must comply with the park rules and regulations but "(c) . . . this section shall not affect in any way, either to validate or invalidate, nor does this section express a legislative policy judgment in favor of or against, the enforcement of a park rule or regulation which prohibits or restricts the subletting of a mobilehome park space by a tenant." The fair import of this section is that subletting is to be governed by the rental agreement between managment and the homeowner and/or the rules and regulations adopted by the mobilehome park. Whether this is a good idea or a bad one is not an appropriate question to be decided by the judiciary. (*Rubin* v. *Green* (1993) 4 Cal.4th 1187, 1205 [17 Cal.Rptr.2d 828, 847 P.2d 1044].) We take the law, or the absence of it, as we find it.

In 1987 Barbara Evans purchased a mobilehome and rented space in respondent's mobilehome park. The park rules were incorporated by reference into the space rental agreement between the park and the mobilehome owner. On July 27, 1992, the rules were amended. Before the amendment, park rule 1.C. provided: "No person may regularly occupy or reside in a mobilehome unless at least one person is at least fifty-five (55) years of age and that person will regularly reside in and occupy the mobilehome on a full-time basis at all times in the future. All other persons who will regularly reside in and occupy the mobilehome must be at least eighteen (18) years of age or older."

Park rule 2 provided: "Guests: A. All guests must register in the Park if they stay more than a total of twenty (20) consecutive days or thirty (30) days in a calendar year. No guest may, however, stay with you more than total of forty five (45) days in a calendar year.

"B. You must acquaint all your guests with the conditions of tenancy of the Park, including these Rules and Regulations. You are also personally responsible for all the actions and conduct of your guests.

"C. Except when guests are entering or leaving the Park, a resident must accompany guests at all times. If the resident is not residing in the mobile-home, a guest may not occupy or use the mobilehome without management's consent."

The new rules, and more particularly, rule 1. C., distributed on July 27, 1992, provide: "No person may regularly occupy or reside in a mobilehome unless at least one person is at least fifty-five (55) years of age and that

---

[1]All further references are to the Civil Code.

person will regularly reside in and occupy the mobilehome on a full-time basis at all times in the future. *That person must also appear on the registration as a registered owner of the home.* All other persons who will regularly reside in and occupy the mobilehome must be at least eighteen (18) years of age or older." (Italics added.) These new rules left in tact the guest provisions.

On June 28, 1992, Evans sublet her mobilehome in violation of the rules. Management successfully petitioned the superior court for an injunction. The injunction recites: "Respondent Mrs. Evans is enjoined from allowing or permitting an unlawful occupant to reside in her mobilehome at Space 23 and Mrs. Erb is enjoined from residing there as a tenant without the written consent of the Mobilehome Park."

At no time has management promulgated a rule allowing subleasing. As I shall explain, a "subtenant" is not a "tenant" within the meaning of the Mobilehome Residency Law. Such a person is, at best, a "guest" who may not reside in the park without management's consent. (Rule 2.C, *ante*, p. 1150.)

The terms given to us by the Legislature are instructive: " 'Management' means the owner of a mobilehome park or an agent or representative authorized to act on his behalf in connection with matters relating to tenancy in the park." (§ 798.2.) " 'Homeowner' is a person who has a tenancy in a mobilehome park under a rental agreement." (§ 798.9.) " 'Rental agreement' is an agreement between the management and the homeowner establishing the terms and conditions of a park tenancy. A lease is a rental agreement." (§ 798.8.) " 'Tenancy' is the right of a homeowner to the use of a site within a mobilehome park on which to locate, maintain, and occupy a mobilehome, site improvements, and accessory structures for human habitation, including the use of the services and facilities of the park." (§ 798.12.) Section 798.34 precludes the charging of fees for guests who stay 20 consecutive days or less, or less than 30 days in a calendar year. Thus, a fee may be charged for guests who stay longer.

The fair import of these provisions is that the Legislature has determined that management should have some control over long-term residents of the mobilehome park.

When the statutes and rules are read together, it is apparent that a "subtenant" who resides in the mobilehome park without the consent of the management is not a tenant at all. Rather, such a person, at best, can only be a "guest," and may only lawfully reside in the mobilehome park with the

management's consent pursuant to the park rules. As indicated, the Mobile-home Residency Law makes no provision for subtenants. Since this is so, there is no statutory authorization or mechanism for enforcement of the park rules and regulations against such a person. If such a person is permitted to stay, it may impinge on the rights of the lawful residents of the park who are required to follow the rules.

Section 798.88 provides that "(a) . . . any person in violation of a reasonable rule or regulation of a mobilehome park may be enjoined from the violation . . . ."

In essence, the majority declare that the rule which effectively prohibits subleasing is unreasonable and not subject to enforcement pursuant to injunction and that such is an unreasonable restraint on alienation. Given the sui generis nature of the mobilehome park-true tenant relationship, the rule which effectively prohibits subleasing without the consent of the park owner is not unreasonable and is not an unlawful restraint on alienation.

In granting the injunction, the trial court said: "On the facts presented in the verified petition, the declarations, and at the injunction hearing, this court also factually finds the mobilehome park's written rule limiting occupancy to owners to be reasonable as applied in the circumstances here." Substantial evidence supports this factual determination (*Monogram Industries, Inc.* v. *Star Industries Inc.* (1976) 64 Cal.App.3d 692, 703 [134 Cal.Rptr. 714]; *American Academy of Pediatrics* v. *Van de Kamp* (1989) 214 Cal.App.3d 831, 838 [263 Cal.Rptr. 46]) and, as explained, the legal determination is not erroneous.

The parties, the trial court, and the majority analyze condominium cases with respect to the reasonableness of the instant park rules. The analogy is, however, inapposite. Condominiums are not analogous to mobilehomes. The owner of a mobilehome has no ownership interest in the land. The owner of a mobilehome has a lease for space upon which to park his or her mobile-home. "Conditions restraining alienation, where repugnant to the interest created, are void." (§ 711.) "Where the interest created is a leasehold, a restriction on alienation is less likely to be considered repugnant." (*Carma Developers (Cal.), Inc.* v. *Marathon Development California, Inc.* (1992) 2 Cal.4th 342, 358 [6 Cal.Rptr.2d 467, 826 P.2d 710].)

The instant park rules are not unreasonable and are not repugnant to the leasehold for space upon which a mobilehome is to be parked. Subletting, without the consent of management, may result in a deterioration in the quality of the rented mobilehome and the mobilehome common areas.

Experience has shown that people take better care of their own property than that of the property of others. Other homeowners in the park have operated under the assumption that no subletting is permissible. As indicated, the "subtenant" is not bound by the park rules and there is no mechanism for enforcement of the rules against the subtenant.

The Mobilehome Residency Law was designed to protect ". . . the owners of mobilehomes occupied within mobilehome parks . . . ." (§ 798.55, subd. (a).) It was not designed to protect subtenants. Enforcement of the rules will not result in an eviction. Evans has many choices: 1) she can move into the mobilehome, 2) she can sell the mobilehome at whatever the market will bring, 3) she can come to some accommodation with management, 4) she can move the mobilehome from the park. What she cannot do is an end-run around the Mobilehome Residency Law and the rules which were extant both before and after July 27, 1992. Even though the cost of moving a mobilehome is not insignificant, a mobilehome is mobile and is designed to be moved.

In my view, section 798.55, subdivision (a) envisions protections for a homeowner who actually resides in the park. It was not enacted as a springboard for a homeowner to sublease his or her mobilehome. The judgment should be affirmed.