Opinion
 

 RICHLI, J.
 

 Donald Johnson, Mary Johnson and Leo Rutherford (Homeowners) reside in the Lake Los Serranos mobilehome park. The park is operated by Jack W. Greening and June L. Greening, doing business as Lake Los Serranos Company (collectively, the Park). The Park brought this action against Homeowners to recover unpaid monthly charges for cable television. Homeowners appeal from summary judgment in favor of the Park, contending the charges were unlawful. We conclude the Mobilehome Residency Law (Civ. Code, § 798 et seq.)
 
 [1]
 
 does not authorize a park owner to charge residents for nonessential services, such as cable television, which the residents do not want or use. We therefore reverse.
 

 I
 

 Factual and Procedural Background
 

 In 1991, the Park decided to replace its “master antenna” television system with a cable system. According to the Park manager, the decision was made jointly with the resident association and reflected the consensus of the association. The residents were told the cost would be about $13.95 based on “100% park participation,” or $18.95 if there were “less than 100% participation.” According to the Park manager, the resident association preferred the “bulk” rate, based on 100 percent participation.
 

 Effective November 8, 1991, the Park entered into a 10-year exclusive agreement with American Cable TV Investors 4, Ltd. (American Cable)
 
 [2]
 
 to provide basic cable television service to all 305 spaces in the Park. The agreement provided that the Park would pay American Cable $10.95, plus tax, per month for each space, “whether or not such units are occupied.” In December 1991, the Park notified residents that cable television would be
 
 *1226
 
 “hooked up to every space in the Park”; that each space would be billed $12.95 per month plus tax;
 
 [3]
 
 and that “if you refuse to allow the cable to be installed in your coach, you will still be billed for the discounted monthly charge of $12.95 plus tax.”
 

 Homeowners own mobilehomes located on spaces leased from the Park under oral month-to-month agreements. Homeowners refused to allow the cable to be connected to their mobilehomes and refused to pay the monthly charges. The Park filed suit against Homeowners, seeking a declaration that the cable television charges were lawful, and damages for Homeowners’ failure to pay the charges. Homeowners cross-complained against the Park and Chino Valley Cablevision
 
 [4]
 
 for trespass and unfair business practices. Eventually, Homeowners dismissed Chino Valley Cablevision and dismissed the trespass claim against the Park.
 

 The Park moved for summary judgment on its complaint and, later, on the cross-complaint. The court granted both motions, finding that under the Mobilehome Residency Law, the Park was entitled to charge for the cable television services “whether or not [Homeowners] permit the cable lines to be attached to their mobilehomes or use the utility.”
 

 II
 

 Discussion
 

 In 1978, the Legislature enacted the Mobilehome Residency Law (MRL), which extensively regulates the landlord-tenant relationship between mobile-home park owners and residents. The MRL recognizes that, unlike other renters, mobilehome owners cannot easily relocate if their tenancies are terminated. As the MRL states: “The Legislature finds and declares that, because of the high cost of moving mobilehomes, the potential for damage resulting therefrom, the requirements relating to the installation of mobile-homes, and the cost of landscaping or lot preparation, it is necessary that the owners of mobilehomes occupied within mobilehome parks be provided with the unique protection from actual or constructive eviction afforded by the provisions of this chapter.” (§ 798.55, subd. (a).) Thus, “. . . it is apparent that the Legislature intended to make it very clear that mobile home tenancies are different from the ordinary tenancy and that landlord-tenant relations involving mobile homes are to be treated differently . . . .”
 
 (Palmer
 
 v.
 
 Agee
 
 (1978) 87 Cal.App.3d 377, 384 [150 Cal.Rptr. 841] [construing predecessor to MRL].)
 

 
 *1227
 
 For example, although “[a] landlord may normally evict a tenant for any reason or for no reason at all”
 
 (S.P. Growers Assn.
 
 v.
 
 Rodriguez
 
 (1976) 17 Cal.3d 719, 730 [131 Cal.Rptr. 761, 552 P.2d 721]), the MRL permits termination of a tenancy only for specified reasons, such as violation of a state or local law relating to mobilehomes, or nonpayment of rent. (§ 798.56, subd. (e)(1).) The MRL similarly limits the charges homeowners can be required to pay to maintain their tenancies. Section 798.31 provides in part, “A homeowner shall not be charged a fee for other than rent, utilities, and incidental reasonable charges for services actually rendered.”
 

 The Park argues a charge for cable television is permissible as a “utility” charge under section 798.31. The Park relies on section 798.41, which authorizes park management to bill a homeowner separately for “utility service fees and charges assessed by the utility for services provided to or for spaces in the park.” (§ 798.41, subd. (a).) Section 798.41, subdivision (a) provides that separately billed utility charges shall not be considered rent for purposes of any local rent control law, as long as the park owner reduces the rent by the amount of the utility charges. Subdivision (a) goes on to state: “Utility services to which this section applies are natural gas or liquid propane gas, electricity, water,
 
 cable television,
 
 garbage or refuse service, and sewer service.” (Italics added.) The Park asserts that the inclusion of cable television in the utilities listed in section 798.41 means cable television charges are considered allowable “utility” fees for purposes of section 798.31.
 

 We are aware of no decision considering whether the authorization of charges for “utilities" in section 798.31 applies to cable television charges. In the absence of controlling authority, we look to principles of statutory construction. Our primary task in construing a statute is to determine the Legislature’s intent.
 
 (Adoption of Kelsey S.
 
 (1992) 1 Cal.4th 816, 826 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) In determining legislative intent, “[w]e must begin with the words of the statute.”
 
 (Ibid.)
 

 The MRL does not define “utilities” generally. Section 798.31, which was enacted in 1978, has not been amended to incorporate the list of “utilities” set forth in section 798.41, which was enacted 12 years later. In fact, section 798.31 and section 798.41 appear to address fundamentally different concerns; section 798.31 specifies permissible charges to homeowners, while section 798.41 specifies the
 
 method
 
 by which certain utility charges may be assessed,
 
 assuming
 
 they are permissible under section 798.31. Indeed, section 798.41 speaks of charges “assessed by the utility,” implying that the decision to impose the charges is made by the supplying company, not the park owner. Thus, the Legislature’s purpose in adding
 
 *1228
 
 section 798.41 to the MRL in 1990 appears to have been to afford park owners subject to rent control a means of preserving their existing profit levels in the face of utility increases, by allowing them to pass the increases on to tenants without having to seek a rent increase. We therefore cannot assume that because the Legislature included cable television in the list of utilities set forth in section 798.41, it meant to afford park management a unilateral right to procure and charge for cable television as a “utility” when it enacted section 798.31 12 years earlier.
 

 “Utilities,” in fact, are most commonly thought of as charges for
 
 essential
 
 services provided by government regulated and sanctioned monopolies. As the Supreme Court has noted, the Public Utilities Commission “deals with services that are essential.”
 
 (Wood
 
 v.
 
 Public Utilities Commission
 
 (1971) 4 Cal.3d 288, 295 [93 Cal.Rptr. 455, 481 P.2d 823].) Similarly, Welfare and Institutions Code section 11452 designates “[utilities” as one of the “Minimum basic standards of adequate care” for purposes of public assistance. In this sense, cable television cannot be considered a “utility.” It is not included within the definition of “utility” in the Public Utilities Code (Pub. Util. Code, § 216;
 
 Sacramento Cable Television
 
 v.
 
 City of Sacramento
 
 (1991) 234 Cal.App.3d 232, 241 [286 Cal.Rptr. 470]), and it is not subject to regulation as a common carrier or utility. (47 U.S.C. § 541(c).) Nor can cable television reasonably be considered “essential” in the way that such services as water and electricity are.
 

 We conclude it is at best uncertain from the language of section 798.31 whether the Legislature intended to include cable television charges as a permissible utility fee. If the meaning of a statute’s wording is unclear, we refer to its legislative history to determine the Legislature’s intent.
 
 (In re York
 
 (1995) 9 Cal.4th 1133, 1142 [40 Cal.Rptr.2d 308, 892 P.2d 804];
 
 Watts
 
 v.
 
 Crawford
 
 (1995) 10 Cal.4th 743, 753 [42 Cal.Rptr.2d 81, 896 P.2d 807].) The history of section 798.31 reflects a concern that homeowners not be required to pay for services that confer no appreciable benefit on them, even if the amounts charged for the services are not unreasonable. In
 
 Dills
 
 v.
 
 Redwoods Associates, Ltd.
 
 (1994) 28 Cal.App.4th.888 [33 Cal.Rptr.2d 838], the court noted: “When first enacted in 1971, the predecessor to section 798.31 simply provided, ‘The owner of a mobilehome park . . . shall not charge any fees to tenants other than charges for rent, utilities, or incidental reasonable service charges.’ (Stats. 1971, ch. 1143, §2, p. 2165.) In 1975, the Legislature amended the statute, prescribing that any service charges be for services
 
 actually rendered,
 
 that the rental agreement disclose any services (and the charges associated with them), and that no services and fees could be assessed against current tenants without notice of 60 days.” (28 Cal.App.4th at pp. 892-893, italics added.) Similarly, we concluded, in
 
 *1229
 

 People
 
 v.
 
 Mel Mack Co.
 
 (1975) 53 Cal.App.3d 621 [126 Cal.Rptr. 505], that the predecessor to section 798.31 reflected “an intent on the part of the Legislature to strictly limit the ability of park management to collect fees from
 
 any
 
 source except, of course, for
 
 services performed."
 
 (53 Cal.App.3d at pp. 627-628, second italics added.)
 

 The requirement that services be “actually rendered” or “performed” implies a request for the services, or at least willing acceptance of them. “ ‘In this state it is an established principle that “Where one performs for another, with the other’s knowledge, a useful service of a character usually charged for, and the latter
 
 expresses no dissent, or avails himself of the service,
 
 a promise to pay the
 
 reasonable
 
 value of the services is implied.” ’ ”
 
 (Hartford Financial Corp.
 
 v.
 
 Burns
 
 (1979) 96 Cal.App.3d 591, 603 [158 Cal.Rptr. 169], first italics added.) The history of section 798.31 therefore tends to support Homeowners’ contention that the statute does not contemplate charges for services not requested or used, even if the services can be characterized as “utilities” for purposes of separate billing under section 798.41.
 

 Also of significance is the fact that the cable television charges in this case were imposed retroactively, on homeowners who began their tenancies when there were no such charges nor any indication that they would be imposed later. “[I]f a statute is amenable to two alternative interpretations, the one that leads to the more reasonable result will be followed.”
 
 (Lungren
 
 v.
 
 Deukmejian
 
 (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) Authority applying the MRL suggests that conditions which might be considered reasonable if imposed at the outset of the tenancy may not be reasonable if imposed later, when it is much more difficult for the homeowner to avoid the conditions by vacating the park. As the court in
 
 Dills
 
 v.
 
 Redwoods Associates, Ltd., supra,
 
 28 Cal.App.4th 888, stated, “The unscrupulous park owner could lure mobilehome owners with a competitive rent, then ‘nickle-and-dime* this relatively captive market with an array of unanticipated charges which when aggregated could render the tenant unable to afford to continue the tenancy.” (28 Cal.App.4th at p. 893, fn. omitted.) As a result, conditions imposed after the inception of the tenancy have been held invalid notwithstanding the fact the MRL affords the park owner the right to change the conditions of tenancy upon proper notice.
 

 In
 
 Rancho Santa Paula Mobilehome Park, Ltd.
 
 v.
 
 Evans
 
 (1994) 26 Cal.App.4th 1139 [32 Cal.Rptr.2d 464], for example, the court held a park rule prohibiting subleasing, adopted after the defendant homeowner entered into her lease, could not be enforced against her. The court recognized that
 
 *1230
 
 as a general matter, park management is free to amend park rules, without the consent of the homeowners, as long as the required statutory notice is given. (§ 798.25.) It also recognized that the Legislature in the MRL expressly refrained from prohibiting park rules against subleasing. (§ 798.23, subd. (c).) The court noted, however, that the MRL authorizes eviction or injunctive relief only for the violation of a “reasonable” rule or regulation. (§§798.56, subd. (d); 798.88.) It concluded the park owner’s unilateral, retroactive prohibition of subleasing was not reasonable: “We hold that such a rule, when applied retroactively—that is, against a homeowner whose lease contains no such restriction and who has not agreed to the restriction—is contrary to the stated purpose of the MRL and is therefore unreasonable.” (26 Cal.App.4th at p. 1147.)
 

 There is no express requirement in section 798.31 that charges for utilities be “reasonable” as there is with respect to park rules in sections 798.56 and 798.88. However, section 798.31 does require that incidental charges for “services actually rendered” other than utilities be reasonable. If cable television is a “service” rather than a “utility” for purposes of section 798.31, charges for it unquestionably are subject to that requirement. And even if cable television can be considered a utility for purposes of section 798.31, we think it unlikely the Legislature intended section 798.31 to afford a park owner carte blanche to procure and charge for whatever services it desires, as long as the services can be characterized as “utilities.” More likely, the Legislature considered an express reasonableness requirement unnecessary in the case of utilities because it had in mind public utilities whose services generally are desired and used by all residents and whose rates are set by law. In any event, because we have concluded section 798.31 is subject to alternative interpretations, we are bound to adopt the interpretation leading to the more reasonable result, in keeping with the purposes of the statute.
 

 Applying that principle, we conclude cable television charges, at least under the circumstances present here, are not authorized by section 798.31 and cannot be imposed without the consent of those required to pay them. Our conclusion rests principally on the following factors. First, it is undisputed that Homeowners did not request, and do not want, cable television services. Although the Park states that it consulted with the residents association before entering into the agreement with American Cable, there is no indication in the record that the residents voted on the proposal or otherwise agreed to it. Indeed, there is no indication that the association itself formally
 
 *1231
 
 approved the proposal. Even if there were, there is no showing that Homeowners agreed, either as a general condition of their tenancy or otherwise, to be bound by the association’s decision.
 
 [5]
 

 The only inference supported by the record before us is that the Park, not the residents, made the decision. Thus we have no basis for concluding that Homeowners expressly or impliedly consented to the Park’s decision. “There is a significant difference between submitting oneself to the future wishes of a community of which one is a part and in which one shares a general community of interest, and of being subject to future regulations imposed by a park owner who may or may not have goals in accord with homeowners and residents."
 
 (Rancho Santa Paula Mobilehome Park, Ltd.
 
 v.
 
 Evans, supra,
 
 26 Cal.App.4th 1139, 1144.)
 
 [6]
 

 We do not consider the Park’s response—that if Homeowners object to paying the monthly charge for cable television they do not want they can simply leave the park and relocate to another one without cable television—to be a realistic solution. It is recognized that residents of mobilehome parks tend to be persons living on fixed incomes. (See
 
 Casella
 
 v.
 
 City of Morgan Hill
 
 (1991) 230 Cal.App.3d 43, 57 [280 Cal.Rptr. 876].) It is also recognized that for owners of mobilehomes, relocation is considerably more problematic than for tenants of other types of facilities. “Because of the high cost of moving mobilehomes, they are anything but mobile. A mobilehome owner who finds living in a particular park impractical or otherwise infeasible faces the alternatives of selling or renting the home.”
 
 (Rancho Santa Paula Mobilehome Park, Ltd.
 
 v.
 
 Evans, supra, 26
 
 Cal.App.4th 1139, 1146.)
 

 Second, it is undisputed that Homeowners have not connected their mobilehomes to the cable television system, and have not received any services from the system. Although the Park argues cable television services were, in fact, “rendered” to Homeowners because they could have connected to the system had they chosen to do so, we conclude the Legislature intended section 798.31’s authorization of utility charges to apply only to fees for services actually used by the recipients. The Legislature has directed the Public Utilities Commission to require a mobilehome park owner who
 
 *1232
 
 furnishes gas or electricity to tenants under a master-meter system to charge the tenants the same rate they would pay if they received gas or electricity directly from the supplying utility. (Pub. Util. Code, § 739.5, subd. (a).) The owner must distribute to the tenants any rebates received from the utility on account of the tenants’ use of the services. (Pub. Util. Code, § 739.5, subd. (b).) These provisions reflect a legislative intent that mobilehome park residents be treated the same as individual purchasers of utility services, to the extent reasonably feasible. Adoption of the Park’s construction of the MRL in this case would, in contrast, require mobilehome residents to pay cable television fees which, if they were individual purchasers, they would be free to avoid entirely if they so chose.
 

 We are unpersuaded by the Park’s argument that residents frequently are required to pay for services they may not want or use, such as trash disposal or sewer services. Such services, unlike cable television, are essential to the physical health and safety of the community. Further, where common waste disposal facilities are used it is not reasonably feasible to monitor their use to determine whether individual residents do or do not use them. Consequently, it is appropriate to require all residents to share the cost.
 

 In contrast, it is undisputed that the cable television services reasonably could be administered so that only those who want them receive them. Before the Park entered into the agreement with American Cable, the residents were told that if fewer than all the residents participated, the charge per space would be about $5 more. Thus, the Park could have provided the services only to those desiring them, though at a greater cost. Additionally, the Park’s statement that the lower rate was based on “100% park participation” is misleading to the extent it suggests the lower rate would apply only if every resident connected to the system. The agreement between the Park and American Cable requires only that the Park pay the monthly rate for each space, whether the space is occupied or not. Thus, the agreement plainly contemplates that all spaces might not be connected to the system; the only requirement is that the Park make' up the difference.
 

 Ill
 

 Conclusion
 

 In sum, we conclude the Legislature did not intend section 798.31 to authorize cable television charges under the circumstances present here. As the lower court’s grant of summary judgment on the complaint and cross-complaint was based solely on its contrary reading of the MRL, on the record before us the judgment cannot be supported and must be reversed.
 
 *1233
 
 Because it granted summary judgment on the cross-complaint based on its conclusion the cable television charges were authorized by the MRL, the lower court had no occasion to consider whether the cross-complaint would be viable if the charges were invalid, and we express no opinion on that point. We note, however, that Homeowners purport to predicate a claim for damages on Business and Professions Code section 17200. The Supreme Court has held that damages are not available in actions based on that provision.
 
 (Heller
 
 v.
 
 Norcal Mutual Ins. Co.
 
 (1994) 8 Cal.4th 30, 45 [32 Cal.Rptr.2d 200, 876 P.2d 999];
 
 Bank of the West
 
 v.
 
 Superior Court
 
 (1992) 2 Cal.4th 1254, 1266 [10 Cal.Rptr.2d 538, 833 P.2d 545].)
 

 IV
 

 Disposition
 

 The judgment is reversed. Costs are awarded to appellants.
 

 McKinster, Acting P. J., and Ward, J., concurred.
 

 Respondents’ petition for review by the Supreme Court was denied June 25, 1997. Baxter, J., did not participate therein.
 

 [1]
 

 Section references are to the Civil Code unless otherwise indicated.
 

 [2]
 

 Throughout the litigation, the parties referred to the cable television provider as Chino Valley Cablevision. Apparently, this was erroneous. The relationship between American Cable and Chino Valley Cablevision, if any, is not clear from the record.
 

 [3]
 

 The additional $2 over the $10.95 paid to American Cable represented a charge imposed by the Park for “administration and billing.”
 

 [4]
 

 See footnote 2,
 
 ante.
 

 [5]
 

 In fact, although the MRL requires a written rental agreement (§ 798.15), it appears from the record that Homeowners occupy their spaces pursuant to oral agreements. There is no indication what, if any, conditions Homeowners may have agreed to in connection with their tenancies.
 

 [6]
 

 However, we express no opinion whether the cable television charge would be permissible if it were shown that a majority of the residents, or their authorized representative, had in fact agreed to it. (Cf.
 
 Karrin
 
 v.
 
 Ocean-Aire Mobile Home Estates
 
 (1991) 1 Cal.App.4th 1066, 1072-1073 [2 Cal.Rptr.2d 581] [street-paving assessment was invalid because not authorized by section 798.31, despite fact park owner held election and obtained residents’ approval].)