[No. B048423. Second Dist., Div. Seven. June 19, 1992.]

ETHEL MAJOR, an Incompetent Person, etc., et al., Plaintiffs and Appellants, v.
MIRAVERDE HOMEOWNERS ASSOCIATION, INC., et al., Defendants and Respondents.

620

---

COUNSEL

Ayscough & Marar and Sidney Lanier for Plaintiffs and Appellants.

Kaiser, DeBiaso, Palmer & Lopez and Eric C. Demler for Defendants and Respondents.

## OPINION

JOHNSON, J.—Plaintiffs sought a preliminary injunction restraining a condominium homeowners association from enforcing certain rules plaintiffs contended unreasonably interfered with their right to use the recreational facilities of the condominium project. The trial court denied an injunction. We reverse the denial of injunctive relief as to the Rasmussens. The appeal of Ms. MaJor is dismissed as moot.

### STATEMENT OF FACTS AND PROCEEDINGS BELOW

John and Donna Rasmussen, husband and wife, own a condominium unit in the Miraverde condominium project. The project is managed by the Miraverde Homeowners Association, Inc. (Association).

The Rasmussens purchased the condominium pursuant to a "Declaration of Covenants, Conditions and Restrictions" (CC&R's) whose provisions are discussed below. The unit was originally occupied by the Rasmussens and their sons, Keith and Kyle. Ms. Rasmussen's mother, Ethel MaJor, subsequently moved into the unit. A few years later, the Rasmussens moved into a new residence and Ms. MaJor remained in the Miraverde condominium.

The dispute in this case centers on the right of the Rasmussens to continue using the recreational facilities of Miraverde, principally the tennis court, even though they are no longer residents of the condominium. Miraverde has only one tennis court. After moving from Miraverde, Ms. Rasmussen and Keith continued to use the court occasionally, while Kyle played regularly. Ms. MaJor is 82 years old and senile. She does not play tennis.

In July 1989, the Association made new rules regarding the use of the tennis court and other common facilities by the Miraverde residents and others. Rule 1.7 states "non-resident" homeowners are not entitled to use any Miraverde facilities except as guests of an authorized resident. Rule 6.4.2 provides only "registered residents" over 18 years of age may reserve the tennis court and rule 6.4.5 requires a "registered resident" to be present whenever a guest plays tennis.

The day after it adopted these rules, the Association informed the Rasmussens they were nonresident homeowners and only entitled to use the tennis court as guests of an authorized resident. As a result, Ethel MaJor, whom the Association considered the authorized resident, would have to personally sign up the Rasmussens and be present during their use of the tennis court. There was evidence Ms. MaJor, because of her physical disabilities, could

not go to the guard building to sign up the Rasmussens to play tennis or be present while they played. The Rasmussens failed to follow the new rules and were denied use of the tennis court. The Association also imposed fines on the Rasmussens for using the tennis court in violation of the new rules.

The Rasmussens and Ms. MaJor filed a complaint against the Association and its directors alleging, inter alia, violation of the Unruh Civil Rights Act, slander of title, and breach of fiduciary duty and seeking injunctive and declaratory relief. The Rasmussens and Ms. MaJor requested a temporary restraining order and preliminary injunction against enforcement of the rules restricting use of the recreational facilities by nonresident homeowners. The trial court issued a temporary restraining order against the assessment of fines against the Rasmussens and set a hearing on the motion for a preliminary injunction.

At the hearing on the preliminary injunction, the parties introduced the following evidence. The Rasmussens purchased their condominium in 1975. The Miraverde condominium project contains one tennis court, two swimming pools, one basketball court, one paddle tennis court, barbecue facilities, recreation room, and some green belt parking all of which the CC&R's refer to as common areas. The board of directors approved the disputed rules effective July 1989. The Association fined the Rasmussens for using the tennis court in violation of the disputed rules. The CC&R's, articles of incorporation, and bylaws were also admitted into evidence.

At the conclusion of the hearing, the trial court made the following findings: that the term "resident" means someone who primarily resides at Miraverde whether they are an owner or a nonowner or a lessee; the Rasmussens are nonresidents; the rules relating to the use of the tennis court and other facilities by "nonresidents" are reasonable. The trial court denied the motion for preliminary injunction and vacated the temporary restraining order.

The Rasmussens and Ms. MaJor appealed the denial of the preliminary injunction.

DISCUSSION

I. *The Appeal of Ethel MaJor Is Moot.*

The complaint of Ethel MaJor alleges, in relevant part, the rules adopted by the Association with respect to guests' use of the tennis facilities discriminate against her in the use and enjoyment of her property on the basis of her

age and physical disabilities in violation of the Unruh Civil Rights Act. (Civ. Code, § 51 et seq.) The complaint seeks a preliminary and permanent injunction against further enforcement of those rules. (Civ. Code, §§ 52 subd. (c)(3), 52.1, subd. (b).) As noted, the trial court denied a preliminary injunction and Ms. MaJor appealed.

While this appeal was pending, two events rendered the appeal moot: Ms. MaJor suffered a stroke and moved out of Miraverde and the trial court sustained a demurrer to her Unruh Civil Rights Act cause of action without leave to amend.

Because Ms. MaJor is no longer a resident of Miraverde there is no longer any discriminatory action on the part of defendants to be enjoined. (Cf. *Old National Financial Services, Inc.* v. *Seibert* (1987) 194 Cal.App.3d 460, 467 [239 Cal.Rptr. 728].) We recognize Ms. MaJor might recover from her stroke and might move back into Miraverde thus raising the possibility the alleged discrimination might be repeated. However, we need not consider these possibilities because the appeal is moot for a second reason.

As previously noted, while this appeal was pending the trial court sustained a demurrer to Ms. MaJor's Unruh Civil Rights Act cause of action. Because the Unruh Civil Rights Act claim was her only basis for a preliminary injunction, Ms. MaJor's appeal from denial of an injunction is now moot.

A preliminary injunction is an interim remedy designed to maintain the status quo pending a decision on the merits. (*Gray* v. *Bybee* (1943) 60 Cal.App.2d 564, 571 [141 P.2d 32].) It is not, in itself, a cause of action. Thus, a cause of action must exist before injunctive relief may be granted. (*Shell Oil Co.* v. *Richter* (1942) 52 Cal.App.2d 164, 168 [125 P.2d 930].) Accordingly, where the complaint fails to state a cause of action an order granting a preliminary injunction must be reversed. (*Watson* v. *Santa Carmenita etc. Co.* (1943) 58 Cal.App.2d 709, 719 [137 P.2d 757].)

An appeal from an order denying a preliminary injunction does not deprive the trial court of jurisdiction to proceed to try the case on the merits. (*Gray* v. *Bybee, supra,* 60 Cal.App.2d at p. 571.) If the court can try the case on the merits then a fortiori it can determine the case has no merit by sustaining a demurrer without leave to amend. In the present case, the trial court having sustained a demurrer without leave to amend to the only cause of action which might have supported a preliminary injunction in favor of Ms. MaJor, her appeal from the denial of a preliminary injunction is moot.

In order to avoid this result the plaintiff may request a stay of trial court proceedings while the appeal from denial of the preliminary injunction is

pending. ■ Furthermore, although an order sustaining a demurrer is not appealable (*Cohen* v. *Equitable Life Assurance Society* (1987) 196 Cal.App.3d 669, 671 [242 Cal.Rptr. 84]), it is reviewable by petition for writ of mandate (*Coulter* v. *Superior Court* (1978) 21 Cal.3d 144, 148 [145 Cal.Rptr. 534, 577 P.2d 669]). We see no reason why such review could not also encompass the denial of preliminary relief. ■ In the present case, plaintiffs, including Ms. MaJor, requested a stay of proceedings and writ review of the order sustaining the demurrer to the Unruh Civil Rights Act cause of action. Both requests were denied.

## II. *The Trial Court Erred in Denying the Plaintiffs a Preliminary Injunction Against an Ultra Vires Rule Which Prevented the Homeowners' Use and Enjoyment of the Common Areas of Their Condominium.*

■ It is within the trial court's sound discretion to grant or deny a preliminary injunction (*IT Corp.* v. *County of Imperial* (1983) 35 Cal.3d 63, 69 [196 Cal.Rptr. 715, 672 P.2d 121].) However, a trial court abuses that discretion by denying a preliminary injunction where the plaintiffs establish a "reasonable probability" of success on the merits and that they will suffer more harm from its denial than the defendant will from its grant. (*Friends of Westwood, Inc.* v. *City of Los Angeles* (1987) 191 Cal.App.3d 259, 264 [235 Cal.Rptr. 788].)

Civil Code section 1353 requires the owner of a project, prior to the conveyance of any condominium, to record a declaration of restrictions relating to such project. Under Civil Code section 1354, those restrictions, where reasonable, are enforceable equitable servitudes and inure to and bind all condominium owners in the project. (See *Ritchey* v. *Villa Nueva Condominium Assn.* (1978) 81 Cal.App.3d 688, 693-694 [146 Cal.Rptr. 695, 100 A.L.R.3d 231].) The Association and the Rasmussens do not dispute the validity of the Miraverde condominium's CC&R's. The CC&R's provide in relevant part:

"Article IV, Section 1.

"Every person or entity who is a record owner of a condominium in the project. . . shall be a member of the Association. . . . Ownership of such condominium shall be the sole qualification for membership.

"Article IV, Section 2.

"The membership held by any owner of any Condominium shall not be transferred, pledged or alienated in any way, except upon the sale or

encumbrance of such Condominium, and then only to the purchaser or mortgagee of such Condominium. Any attempt to make a prohibited transfer is void.

"Article VI, Section 2.

"Every member shall have a right and easement of enjoyment in and to the common area within the properties, and such easement shall be appurtenant to and shall pass with the title to every assessed Condominium, subject to the following provisions: . . . (b) The right of the Association to establish uniform rules and regulations pertaining to the use of the common area and recreational facilities.

"Article VI, Section 3.

"Any member may delegate, . . . , his right of enjoyment to the common area and facilities to the members of his family, his tenants, or contract purchasers who reside on the property."

As record owners of a Miraverde condominium, the Rasmussens are members of the Association. This membership is not transferable unless the Rasmussens were to sell the condominium. There is no evidence in the record the Rasmussens ever delegated their right to use the common areas to Ms. MaJor or anyone else.

 The principal issue in this case is whether the Association is authorized to discriminate between members who reside at Miraverde and nonresident members, such as the Rasmussens, in the use and enjoyment of common areas including recreational facilities. The CC&R's grant every *member* of the Association a right and easement of enjoyment in and to the common areas within the property. (Art. VI, § 2.) These rights are subject only to the right of the Association to establish uniform rules and regulations pertaining to a *member's* use of the common areas and recreational facilities (*Ibid.*) The Rasmussens assert the Association acted without authority in restricting the use of common areas, including recreational facilities, by members who are not residents of Miraverde. We agree.

The Association's bylaws, article IV, section 1, grant the Association's board of directors the power to manage and maintain the common areas and to make such rules and regulations therefore not inconsistent with law, the Association's articles of incorporation and its bylaws. The Association's articles of incorporation, article IV, section 2(a), require the Association to perform the duties and obligations as set forth in the CC&R's. The CC&R's

state that "every member shall have a right and easement of enjoyment in and to the common area." The legal effect of the CC&R's is to grant "every member" the right to use the common areas subject to uniform rules and regulations.[1] By classifying members into two categories, residents and nonresidents, the Association created rules that are not uniform as to all members. Under the Association's rules, a resident member of the Association is entitled to use the common areas subject only to reasonable restrictions on time and manner. A nonresident member is not entitled to use the common areas unless he or she is an authorized guest of a registered resident. Hence, the Rasmussens are not entitled to use the common areas, including recreational facilities, unless Ethel MaJor, the authorized registered resident, reserves the recreational facility and is personally present during its use. The evidence was undisputed Ethel MaJor's physical handicap prevented her from reasonably complying with this rule. Thus, the Rasmussens were denied the use and enjoyment of the recreational facilities on an equal footing with resident members of Miraverde, and the trial court so found. The Association's rule became a de facto termination of the Rasmussens' use of the common areas. The effect of the Association's rule was to terminate a right originally granted by the CC&R's to all members whether resident or not.

Furthermore, the Association's rules exclude the Rasmussens from the common areas while simultaneously charging them a fee for the common areas' use and improvements. (Art. VII, § 1.) If the Rasmussens were to fail to pay their annual or special assessments, the Association would have the right to charge interest, bring an action at law, or foreclose the lien upon the condominium. (Art. VIII, § 1.) In return for the annual or special assessment fees, the Rasmussens, as nonresident members, would receive nothing. To de facto terminate the Rasmussens' right would impose a substantial obligation upon the Rasmussens while imposing no obligation at all on the Association. Such an illusory agreement would be not enforceable. (See Farnsworth, Contracts (2d. ed. 1990) § 2.13, p. 106 et seq.)

The Association relies on *Sunrise Country Club Assn.* v. *Proud* (1987) 190 Cal.App.3d 377, 381-382 [235 Cal.Rptr. 404] for the proposition ownership of a condominium has no necessary relationship to its use. We do not find this case persuasive in the matter at hand. In *Sunrise Country Club Assn.*, the court refused to uphold the prohibition on sale of a condominium designated for "adults only" to persons having children. The court recognized an owner

---

[1]The CC&R's grant any member the right to delegate his right of enjoyment to the common areas to the members of his family, tenants, or contract purchasers who reside on the property (art. of incorp., art. VI, § 3.) Here we do not address the issue whether the member's right and easement to the common areas is extinguished upon delegation to a third party.

with children could comply with the "adults only" restriction because the owner may own the condominium for investment purposes or for use by less than all family members (190 Cal.App.3d at p. 383.) It was in that context the court remarked ownership of a condominium has no necessary relationship to its use. (*Ibid.*) This case is distinguishable from the Rasmussens' case. Whether, in general, there is no necessary connection between ownership and use, there is a specific connection between ownership and use in our case. The terms of the CC&R's link ownership with the use of the common areas. The Rasmussens' right to use the common areas comes from being owners of a Miraverde condominium.

When disputes arise between the homeowners and the homeowners association, the courts will look to the governing instruments for guidance in determining whether the association has acted within its authority. (Thomas & Grogan, Cal. Condominium and Planned Development Practice (Cont. Ed.Bar 1984) State Regulation of Common Interest Subdivision Sales, p. 236.) Actions taken in excess of the association's power are unenforceable and courts have granted injunctive relief against associations which have exceeded the scope of their authority.

For example, in *Spitser* v. *Kentwood Home Guardians* (1972) 24 Cal.App.3d 215, 218 [100 Cal.Rptr. 798], the association assessed the homeowners' fees to correct a nuisance emanating from the local airport. The CC&R's expressly prohibited the use of homeowners' lots in a manner which constituted a nuisance to the neighborhood and allowed the use of assessment funds to enforce this restriction. In upholding the lower court's injunctive relief against the association's assessment of the homeowners, the court held the association was not authorized or required to protect Kentwood from nuisances emanating from *outside* the area. In *Ticor Title Ins. Co.* v. *Rancho Santa Fe Assn.* (1986) 177 Cal.App.3d 726 [223 Cal.Rptr. 175], the appellant challenged the association's action changing setback restrictions set forth in the CC&R's. The association was authorized to adopt rules and regulations for the general welfare of the community. However, the CC&R's specifically set forth setback restrictions for the community and provided any change required approval by two-thirds of the owners. The association proceeded to change the setback requirements on its own. The court held the association's actions were invalid because it was not authorized to enact setback regulations different from those contained in the CC&R's.

Florida courts have adopted a similar approach to challenges directed at rules adopted by the homeowners association:

"When a court is called upon to assess the validity of a rule enacted by a board of directors, it first determines whether the board acted within its

scope of authority and, second, whether the rule reflects reasoned or arbitrary and capricious decision making." (*Beachwood Villas Condominium* v. *Poor* (Fla.Dist.Ct.App. 1984) 448 So.2d 1143, 1144; see also Note, *Judicial Review of Condominium Rulemaking* (1981) 94 Harv. L.Rev. 647, 652-653.)

In view of the foregoing authorities, we conclude an association may not exceed the authority granted to it by the CC&R's. Where the association exceeds its scope of authority, any rule or decision resulting from such an ultra vires act is invalid whether or not it is a "reasonable" response to a particular circumstance. Where a circumstance arises which is not adequately covered by the CC&R's, the remedy is to amend the CC&R's. The courts have held homeowners are subject to any reasonable amendment of the CC&R's properly adopted (See, e.g., *Ritchey* v. *Villa Nueva Condominium Assn.*, *supra*, 81 Cal.App.3d at p. 697.)

For the reasons set forth above, we conclude it is reasonably probable the Rasmussens will prevail on the merits in establishing the Association exceeded its authority by excluding nonresident members from the common areas.

We further find the Rasmussens would suffer a greater harm from denial of the injunction than the Association would from its grant. Civil Code section 783 recognizes that ownership of a condominium constitutes a statutory estate in real property. (See *Laguna Royale Owners Assn.* v. *Darger* (1981) 119 Cal.App.3d 670, 673, fn. 1 [174 Cal.Rptr. 136].) The Rasmussens' purchase of the condominium vested in them the right to the physical unit as well as a right to use the common area. To exclude the Rasmussens from the common area would prevent them from enjoying a significant part of their estate.

The Association asserts the restrictions regarding the use of the common areas are necessary in order to prevent overcrowding. In view of the condominium's CC&R's, the owners of the condominiums were well aware of the limited facilities available at the Miraverde condominium project. The owners of the condominiums should not expect anything more than they bargained for. Furthermore, the Association should be able to cure any inconvenience or overcrowding with proper rules and regulations, consistent with the CC&R's, governing the reasonable time and manner of use of the recreational facilities.[2]

---

[2]Our decision, of course, is based on the record before us. We note, for example, the Rasmussens were not seeking to both use the tennis court themselves and have a tenant or other delegatee use the court. Consequently the Rasmussens' unit was placing no greater

## DISPOSITION

The order denying the preliminary injunction is reversed as to the Rasmussens, and the matter is remanded to the trial court for further proceedings not inconsistent with the views expressed herein. The appeal of Ethel MaJor is dismissed as moot. Each party is to bear its own costs on appeal.

Lillie, P. J., concurred.

**WOODS (Fred), J.**—I concur in the judgment only since the majority opinion, in my view, reaches the correct result but unnecessarily adverts to and inadequately treats the issue of delegation. By its brevity the approach of the majority may create confusion for trial courts and litigants in future cases involving related issues.

Respondents' petition for review by the Supreme Court was denied September 2, 1992. Panelli, J., was of the opinion that the petition should be granted.

---

burden on the Association's facilities than it did when the Rasmussens occupied that unit and no greater burden than if they still did. As mentioned earlier (see fn. 1, *ante*), we need not reach the question whether, under the CC&R's, a delegation to a tenant or contract owner of the owner's right to enjoy common facilities would have the effect of terminating (or suspending) the owner's personal rights to use those facilities. We leave this question to the trial court for resolution in the first instance should new facts be developed on remand.