[No. D019570. Fourth Dist., Div. One. Dec. 13, 1995.]

KENNETH LIEBLER, Plaintiff and Appellant, v.
POINT LOMA TENNIS CLUB, Defendant and Respondent.

**COUNSEL**

Alan L. Williams for Plaintiff and Appellant.

Genson, Even, Crandall & Wade and Kurt A. Moll for Defendant and Respondent.

## Opinion

**NARES, J.**—Kenneth Liebler (Liebler) appeals a judgment in favor of defendant Point Loma Tennis Club Community Corporation (PLTC), following a determination the PLTC declaration of covenants, conditions and restrictions did grant PLTC the authority to enact rules which exclude Liebler, a nonresident owner, from using the common area recreational facilities.

Liebler contends (1) the PLTC covenants, conditions and restrictions do not grant PLTC such a power of exclusion; (2) the rules and regulations which exclude nonresident owners from common area recreational facilities are unreasonable; and (3) the covenants, conditions and restrictions also do not grant PLTC the power to impose fines for violations. We affirm the judgment.

### Facts[1] and Procedure

Liebler purchased a condominium unit[2] in the Point Loma Tennis Club in June 1984. When Liebler purchased his unit, he received a copy of the recorded PLTC declaration of covenants, conditions and restrictions (CC&Rs) and the PLTC rules and regulations.

The CC&Rs (1) establish ownership of a unit as the basis for holding a membership in the PLTC (§ 2.1) and (2) repeatedly set out the duty of the corporation to establish necessary rules for use and occupancy of the property (§ 3.2.9) and the common areas as well (§ 7.8.2).

Since 1977 (some seven years before Liebler acquired his unit), the PLTC rules have specifically excluded nonresident owners from use of the common area recreational facilities. In addition, the CC&Rs contain a covenant specifically prohibiting the severance and separate conveyance of an owner's interest in his unit from his undivided interest in the common area. Liebler never lived in the unit, but leased it to his daughter and then to a succession of tenants.

At the time Liebler purchased his unit, he and his daughter registered and obtained identification cards for use of the PLTC recreational facilities. After Liebler's daughter moved out and Liebler rented the unit to others, he

---

[1]The facts are not in dispute, having largely been stipulated to before trial. The trial was conducted without a jury, and neither party raises any issue of fact on appeal.

[2]For a description of "common interest" developments tracing the development of modern condominium ownership, see *Nahrstedt* v. *Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 370-375 [33 Cal.Rptr.2d 63, 878 P.2d 1275].

continued to use the recreational facilities, in particular, the tennis courts. The Sullivans, Liebler's tenants at the time of the lawsuit, also used the recreational facilities.

Shortly after Liebler leased his unit to the Sullivans, he amended the lease agreement to include a statement that "Both parties confirm that for all purposes, the tenant and landlord share the premises as cotenants." No evidence was introduced showing Liebler ever occupied the unit or shared it with the Sullivans in any way other than by continuing to use the common area recreational facilities.

Early in 1992, some homeowners asked the board of directors of the PLTC homeowners association (Board) to look into use of the tennis courts by nonresidents and others who "did not belong there." In April a list was compiled of owners who held identification cards but whose addresses indicated they were not residents of PLTC. The Board then sent a letter to each of these nonresident owners asking for the return of their cards, reminding them of the rule requiring assignment of the use of the facilities to their tenants, and advising them that nonresident owners who continued to use the facilities would be asked to leave or fined.

All the nonresident owners except Liebler complied, either by returning their cards or, in some cases, reporting the cards as lost. Liebler responded with a hostile letter informing the Board he was a "registered resident" of his unit by the terms of his lease and he considered himself entitled to the privileges of a tenant as well as those of an owner. Liebler did not, however, provide the Board with a copy of the lease. Liebler later testified he did not live in the unit at the time he advised the Board that he was a "registered resident." Liebler continued to use the PLTC tennis courts at will.

On May 12, 1992, the Board sent Liebler a notice of violation in an attempt to enforce the rule against use of the recreational facilities by nonresident owners. Liebler appeared before the PLTC grievance committee for a hearing on June 16, 1992. At the hearing, Liebler continued to insist he was entitled to use the recreational facilities based on the wording of his lease, but refused the committee's request to view the lease itself.

After Liebler spoke to the committee, it considered the matter and recommended Liebler be fined $150 for past violations and be notified that future violations of the nonresident rule would incur additional fines. Liebler continued to use the facilities. PLTC continued to fine Liebler. Liebler has never paid any fines and PLTC has not taken legal action to attempt to collect them.

Liebler sued PLTC, seeking declaratory relief from the fines, and enforcement of equitable servitude by issuance of a temporary restraining order, and temporary and permanent injunctions against enforcement of the nonresident rule. Liebler also alleged breach of the covenant of enjoyment by PLTC, due to interference with Liebler's claimed property right in the easement of enjoyment of the common recreational facilities.

After trial, the court determined the PLTC CC&Rs granted the Board the authority to create a rule excluding nonresident owners from use of the common recreational facilities. The court found the nonresident rule as enacted was reasonable and it had been reasonably enforced. The court made a partial ruling on the fines issue, finding the PLTC had the authority to impose fines on a member of the association, but declining to decide whether the fines were legally enforceable until an attempt was made to collect. Judgment was entered for PLTC.

## STANDARD OF REVIEW

Liebler claims the CC&Rs do not provide for the rule excluding nonresident owners from use of the common areas, and also attacks the reasonableness of the rule in question. ■ It is clear that provisions restricting use and occupancy in recorded covenants governing a condominium project are "presumed to be reasonable and will be enforced uniformly against all residents of the common interest development *unless* the restriction is arbitrary, imposes burdens on the use of lands it affects that substantially outweigh the restriction's benefits to the development's residents, or violates a fundamental public policy." (*Nahrstedt* v. *Lakeside Village Condominium Assn., supra,* 8 Cal.4th at p. 386, italics in original.) Rules made pursuant to recorded use restrictions are evaluated for their reasonableness in light of the interests of the residents as a whole, rather than the individual interests of a particular homeowner. (*Ibid.*)

## DISCUSSION

### I.  *Exclusion of Nonresident Owners From Common Areas*

■ Liebler argues the provisions of article 8 of the PLTC CC&Rs create an easement of enjoyment in the common area to the benefit of a unit owner which cannot be abrogated by rules later adopted by the board of directors. Liebler points to specific portions of article 8 which provide:

"8.  MEMBERS EASEMENTS OF ENJOYMENT IN THE COMMON AREA:

"The owners shall have the right and easement of enjoyment in and to the Common Area and such right and easement shall be appurtenant to and shall

pass with the title to every assessed residential condominium subject to the following provisions:

"8.1   The right of the Corporation to limit the number of guests of members.

"8.2   The right of the Corporation to establish uniform rules and regulations pertaining to the use of the Common Area and the recreational facilities thereon.

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"8.7   Any Member may delegate in accordance with the By-Laws, his right of enjoyment to the Common Area and facilities to the members of his family, his tenants or contract purchasers who reside on the Property."

The rule to which Liebler objects is found in the rules and regulations of the PLTC as follows:[3]

"IV.   RECREATIONAL AREA

".   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"4.2   Use: The recreational facilities shall be used only by residents of PLTC and their guests. The right to use the facilities is appurtenant to the individual condominium unit and can not be separated from it (CC&R Section 8). Nonresident owners, whose units are rented or available for rent, do not have the use of the recreational facilities."

Liebler's argument is that by virtue of ownership, he gains an easement of enjoyment in the common area which he may continue to exercise until he transfers the actual title of the unit to a subsequent owner. He insists he is entitled to continue to use the common area so long as he owns the unit, and in addition, he may allow his tenants to also use the common area recreational facilities. He argues his right as an owner cannot be abridged by a rule that excludes nonresident owners from enjoyment of the recreational facilities.

Liebler relies primarily upon *MaJor* v. *Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618, 625-626 [9 Cal.Rptr.2d 237], which held that a

---

[3]Although this rule was adopted in 1992, both parties agree a rule excluding nonresident owners from use of the recreational facilities has existed since at least 1977, predating Liebler's ownership in PLTC by at least seven years.

similar rule impermissibly created two categories of members, terminating a right "originally granted by the CC&Rs to all members whether resident or not." Although the present case also involves a dispute over use of tennis courts, there are significant legal and factual differences between the two. *MaJor* involved a completely physically disabled tenant who was an immediate family member of the owners, themselves former occupants, and the rule in question not only was promulgated long after their purchase, but appeared to have specifically singled out and targeted the owners for disparate treatment. (*Id.* at 621-622.)

The *MaJor* court itself noted the limits of its decision, which did not reach delegation of the right of enjoyment to a third party (*MaJor* v. *Miraverde Homeowners Assn.*, *supra*, 7 Cal.App.4th at p. 626, fn. 1), or to the situation where, as here, a nonresident owner sought use of the tennis court both for himself and for a tenant. (*Id.* at p. 628, fn. 2.)

A further and central point distinguishing this case from *MaJor*, however, is the presence in the PLTC CC&Rs of a covenant specifically prohibiting severance and separate conveyance of an owner's component interests in the private and common use areas. *MaJor* is silent as to whether the CC&Rs there contained such a provision, and the *MaJor* court never discussed and appears not to have contemplated the effect such a provision would have when read together with the rest of the CC&Rs. Here, however, the PLTC CC&R article 12.2 contains the following covenant:

"12. Covenants Against Partition and Severability of Component Interest:

". . . . . . . . . . . . . . . . . . . . . . . . .

"12.2 No Owner shall be entitled to sever his Unit from his related undivided interest to the Common Area for any purpose, and no component interest may be severally sold, conveyed, encumbered or hypothecated. Any violation or attempted violation of this provision shall be void and of no effect . . . ."

The plain meaning of CC&R article 12.2 is that the exclusive use area (the unit) and the undivided interest in the common area are a unitary interest for conveyance purposes, and one may not be conveyed without the other. As noted by the court below, the most obvious way to attempt severability would be for an owner to attempt to convey his interest in the common area to a third party who would not otherwise have rights of access.

A less obvious but equally prohibited severance would occur if an owner attempted to convey the unit, but reserve the right of common area access to

himself, thus denying the purchaser or lessee the use of the common area. What Liebler attempted was a variant on this form of separate conveyance.

The amendment to Liebler's lease declaring that landlord and tenants shared the premises as cotenants, when there was no family or prior relationship with the lessees and no evidence Liebler ever shared the unit with them, can only have been an attempt to reserve to himself access to the common area while conveying a leasehold estate in the unit. This is contrary to CC&R article 12.2's prohibition against separate conveyance.

When CC&R article 12.2 is read together with article 8.7, which declares members may delegate their rights of enjoyment to the common area to their tenants "who reside on the property," it becomes clear the intent of the CC&R provisions is to have one set of users per unit: either the owner or the tenant, but not both. There is no mention of delegating common area rights and contemporaneously retaining them. Because under article 12.2 access to the common area cannot be severed from the unit, a conveyance of the unit to a tenant necessarily suspends the owner's access to the common area for the length of the tenancy.[4]

Thus, unlike *MaJor*, where the rule against nonresident owners was held ultra vires to the board's authority, here PLTC rule 4.2 is simply a clear statement of the effect of CC&R article 12.2, read together with CC&R article 8.7. None of Liebler's rights have been extinguished or terminated, and at such time as he ceases leasing the unit and himself becomes a resident he will regain full access to the common area recreational facilities.

■ As explained in *Nahrstedt* v. *Lakeside Village Condominium Association, supra,* 8 Cal.4th at page 372, "Use restrictions are an inherent part of any common interest development and are crucial to the stable, planned environment of any shared ownership arrangement. [Citation]." The *Nahrstedt* court said further: "The restrictions on the use of property in any common interest development may limit activities conducted in the common areas as well as in the confines of the home itself. [Citations.]

"   . . . . . . . . . . . . . . . . . . . . . . . .

---

[4]We also observe that Civil Code section 1362 provides in any event that "[u]nless the declaration *otherwise* provides, in a condominium project, or in a planned development in which the common areas are owned by the owners of the separate interests, the common areas are owned as tenants in common, in equal shares, *one for each unit or lot.*" (Italics added.) Necessarily, if the common areas are owned in shares of "one for each unit," it is not logically possible (even absent the covenant to the contrary herein) to convey a lease in the unit together with the interest in the common areas, while also retaining the latter separately.

". . . Ordinarily . . . ownership also entails mandatory membership in an owners association, which, through an elected board of directors, is empowered to enforce any use restrictions contained in the project's declaration or master deed and to enact new rules governing the use and occupancy of property within the project. [Citations.] Generally, courts will uphold decisions made by the governing board of an owners association so long as they represent good faith efforts to further the purposes of the common interest development, are consistent with the development's governing documents, and comply with public policy. [Citation.]" (8 Cal.4th at pp. 373-374.)

*Nahrstedt* makes clear that restrictions contained in the recorded CC&Rs will be accorded a presumption of validity. (*Nahrstedt* v. *Lakeside Village Condominium Assn., supra,* 8 Cal.4th at p. 383.) In this case, the challenged rule is clearly within the contemplation of the relevant presumptively valid provisions of sections 8 and 12 of the CC&Rs, as well as sections 3.2.9 and 7.8.2. Because we hold the challenged rule is a proper implementation of the relevant sections of the CC&Rs, Liebler's argument that the rule is not permitted by the CC&Rs must fail.

## II. *Reasonableness*

The next argument raised by Liebler is that the rule which he challenges is not reasonable, and for this reason may not be enforced against him. The ability to enforce use restrictions is not, of course, absolute. California Civil Code section 1354, subdivision (a) provides: "The covenants and restrictions in the declaration shall be enforceable equitable servitudes, unless unreasonable . . . ." The *Nahrstedt* court defined unreasonable as those restrictions which "are wholly arbitrary, violate a fundamental public policy, or impose a burden on the use of affected land that far outweighs any benefit." (*Nahrstedt* v. *Lakeside Village Condominium Assn., supra,* 8 Cal.4th at p. 382.)

In addition, enforcement of the restriction must be in good faith, not arbitrary or capricious, and by procedures which are fair and uniformly applied. (*Nahrstedt* v. *Lakeside Village Condominium Assn., supra,* 8 Cal.4th at p. 383.) The framework of reference, as the court made clear, is not the reasonableness specific to the objecting homeowner, but reasonableness as to the common interest development as a whole. (*Id.* at p. 386.) Thus, restrictions recorded in the declaration (here, the CC&Rs) are presumptively reasonable, and so long as uniformly applied, will be enforced by the courts unless they fall into one of the three categories of "unreasonable" restrictions. (*Ibid.*)

In this case Liebler's claim that exclusion of nonresident owners from the common recreational facilities is unreasonable must fail, since the

evidence received below demonstrates (a) the restriction was reasonable in itself from the perspective of the development as a whole, rather than that of Liebler, and (b) this reasonable restriction was also neither arbitrarily nor unfairly applied, but was instead applied evenhandedly.

## A. *The Restriction Itself Is Reasonable.*

Viewed from the perspective of this particular common interest development as a whole, there is no indication that the restriction is arbitrary.[5] To the contrary, as noted by the court below, there are valid reasons why members of a tennis-oriented residential condominium might choose to restrict access to their private tennis courts, since maintaining a low density ensures the courts will be available to residents, families and guests.

The number of tennis courts constructed in any particular development is likely determined during the design phase based on the proposed number of occupants, extrapolated from the number of units in the condominium. The added burden from use by nonresident owners in addition to tenants and owner-residents could potentially greatly increase the number of individuals competing for court space, and this decrease in availability lessens the attractiveness of a tennis-oriented facility.

We are unable to discern any issue of fundamental public policy in the action of a private association which determines to limit access to the available tennis courts to only those members actually in residence, when no restrictions whatsoever are placed on who may choose to reside in the condominium. Any owner may choose to reside on the premises, and thus have complete access to the common area recreational facility.[6]

Finally, viewed from the context of the common interest development as a whole, the burden on the individual owner is most certainly not disproportionate to the benefit to the whole. Presumably, a large factor in the decision of a prospective owner or tenant to move into a tennis-oriented facility is ready access to private courts. Maintaining a low density by excluding the public, and here, in long-standing restrictions, nonresident owners as well,

---

[5] Liebler argued below that the reasonableness of the rule was to be tested from his own perspective, citing *Bernardo Villas Management Corp.* v. *Black* (1987) 190 Cal.App.3d 153 [235 Cal.Rptr. 509] and *Portola Hills Community Assn.* v. *James* (1992) 4 Cal.App.4th 289 [5 Cal.Rptr.2d 580]. These cases have been disapproved in *Nahrstedt* v. *Lakeside Village Condominium Assn., supra,* 8 Cal.4th at pages 385-386, requiring instead the focus be on "the restriction's effect on the project as a whole, not on the individual homeowner." (*Id.* at p. 386.)

[6] Liebler's amended lease agreement declaring that he and his tenants "share the premises as cotenants" is ineffectual in light of the admitted fact Liebler does *not* reside on the premises.

confers a benefit on the residents for which many will pay a higher price. Thus Liebler himself has benefited from the restriction, since he is presumably thereby able to negotiate from his tenants a higher rent than he otherwise would have been able to obtain for the premises.

### B. *The Restriction Has Been Fairly Applied.*

Liebler argued the restriction was unfairly and arbitrarily applied, and he had been singled out for exclusion in some sort of personal vendetta. Yet despite a full and fair hearing below, no evidence supported his allegations. The facts and documents stipulated to before trial, and later supported by uncontroverted testimony, indicate that after nonspecific complaints from residents to the Board about nonresidents using the facilities in contravention of the rules, the initial steps toward enforcement were directed at all nonresident owners who were using or potentially using the recreational facilities. First, a list was compiled of owners with identification cards for use of the recreational facilities whose addresses were not in the confines of PLTC. Then, a form letter was sent to each asking for the return of the cards. With the single exception of Liebler, all nonresident owners complied with the request.

Liebler chose to respond with a letter that can at best be described as hostile. He continued to use the facilities whenever he wished, even after he was no longer in possession of his identification card, and went on using them at least until the date of trial. Faced with such flagrant disregard for its authority, the Board ultimately chose to fine Liebler for his repeated violations.[7]

Before fining Liebler, PLTC provided him notice and an opportunity for a hearing. He addressed the grievance committee in person. Although the Board continued to fine Liebler as he continued to violate the restriction, no attempt was made to collect the fines, and Liebler has suffered no out-of-pocket damages. Despite Liebler's allegations of unfairness no evidence was introduced, even in his own testimony, that would show an attempt at selective enforcement.

Since the restriction has been both reasonably and evenly enforced against all to whom it applies, and the enforcement procedures have been fair, including advance written notice, compliance with a previously published and distributed schedule of fines, according Liebler the opportunity to be heard by the grievance committee before proceeding with fines, and since no

---

[7]We do not here decide the separate question of whether such fines are legally enforceable. See part III, *post.*

evidence was introduced of selective enforcement, Liebler's assertion of unreasonable enforcement must fail.

### III. *Authority to Impose Fines*

■ Liebler last contends that, absent an express provision in the PLTC CC&Rs authorizing such, the Board lacks the authority to subject him to fines. CC&R article 3.2.9 states the corporation may "[e]stablish and publish such rules and regulations as the Board may deem reasonable in connection with the use, occupancy and maintenance of all of the Property . . . ." PLTC rule 5.2 provides in part that "[e]nforcement shall be carried out in a fair and timely manner by means of fines . . . and other legal action as appropriate." Section VI of the PLTC rules is a schedule of fines, providing that for "Misuse of the common area" the fine will be $50. Liebler received copies of the PLTC rules when he purchased his condominium unit. For the reasons which follow, we reject Liebler's assertion these provisions cannot support the imposition of fines upon him.

■ As noted in part I, *ante*, our Supreme Court in *Nahrstedt v. Lakeside Village Condominium Assn.*, *supra*, 8 Cal.4th at page 373, stated that one of the characteristics of condominium ownership is "mandatory membership in an owners association, which, through an elected board of directors, is empowered to enforce any use restrictions contained in the project's declaration or master deed and to enact new rules governing the use and occupancy of property within the project."

While cautioning against abuses of such regulatory power (*Nahrstedt v. Lakeside Village Condominium Assn.*, *supra*, 8 Cal.4th at pp. 373-374), the *Nahrstedt* court (as we have cited in part I, *ante*) went on to observe: "Generally, courts will uphold decisions made by the governing board of an owners association so long as they represent good faith efforts to further the purposes of the common interest development, *are consistent with the development's governing documents*, and comply with public policy. [Citation.]" (8 Cal.4th at p. 374, italics added.)

■ Civil Code section 1363, subdivision (i) provides in pertinent part that "[i]f an association adopts or has adopted a policy imposing any monetary penalty, including any fee, on any association member for a violation of the governing documents or rules of the association . . . the board of directors shall adopt and distribute to each member . . . a schedule of the monetary penalties that may be assessed for those violations, which shall be in accordance with authorization for member discipline contained in the governing documents."

Because the PLTC governing documents establishing the right to fine offending association members comply with the cited code section, and because the authorization for the challenged rules is itself contained in the recorded PLTC CC&Rs, Liebler is incorrect in asserting such fines are unauthorized. The trial court correctly found PLTC had the power to impose fines upon Liebler for his violations of PLTC rules, although that court did not address the question of the means by which such fines might be collected.[8]

## CONCLUSION

The judgment is affirmed. Respondents to recover costs on appeal.

Work, Acting P. J., and Haller, J., concurred.

A petition for a rehearing was denied January 8, 1996, and appellant's petition for review by the Supreme Court was denied February 29, 1996.

---

[8]We also need not here reach the question of the means by which such fines may be collected, as there is at present no actual case or controversy concerning this matter. Both sides agree no attempt has been made to collect the fines, and absent such collection efforts, a determination in the abstract of the manner in which PLTC might collect such fines would constitute an advisory opinion. " 'The rendering of advisory opinions falls within neither the functions nor the jurisdiction of this court.' (*People* ex rel. *Lynch* v. *Superior Court* (1970) 1 Cal.3d 910, 912 [83 Cal.Rptr. 670, 464 P.2d 126].)" (*Salazar* v. *Eastin* (1995) 9 Cal.4th 836, 860 [39 Cal.Rptr.2d 21, 890 P.2d 43].) That holding applies here.