Filed 6/22/26  Infinite Glow v. JPMorgan Chase Bank CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| INFINITE GLOW, LLC, <br>      Plaintiff and Appellant, <br> v. <br><br> JPMORGAN CHASE BANK, N.A., <br>      Defendant and Respondent. | A174415 <br><br> (Alameda County <br> Super. Ct. No. 23CV049444) |

In 2018, appellant Infinite Glow, LLC (Infinite) took out a $3,200,000 loan with respondent JPMorgan Chase Bank, N.A. (Chase) to purchase a rental property.  In March 2023, Infinite stopped making payments on the loan, asserting that various government regulations put in place during the COVID-19 pandemic allowed Infinite's tenants to stop paying their rent, the effect of which was to make it impossible for Infinite to make its loan payments.  When Chase initiated foreclosure proceedings, Infinite filed a complaint against it seeking declaratory relief that it was excused from making the loan payments under Civil Code under sections 1511 and 3532.[1]  Chase filed a demurrer, which the trial court sustained without leave to amend, and entered judgment for Chase.  Infinite appeals.  We affirm.

---

[1]     Undesignated statutory references that follow are to the Civil Code.

# BACKGROUND

**The Facts[2]**

In November 2018, Chase made a commercial real estate loan in the amount of $3,200,000 to Infinite, a "family-owned limited liability company owning one parcel of real property" in Oakland, a property described by Infinite as "rental housing property with 18 efficiency units" (the property).

On November 6, 2018, Infinite executed a note in the amount of $3,200,000, apparently signed on its behalf by Mukunda Singhal and Tara Singhal, both identified as a "managing member."[3]

To secure payment of the note, that same day Infinite executed for the benefit of Chase a Deed of Trust, Security Agreement, Assignment of Leases and Rents and Fixture Filing ("Deed of Trust"). The Deed of Trust encumbers the property, together with the related improvements, furniture, fixtures, equipment, and other items, including a multi-family building. On November 9, the Deed of Trust was recorded in the official records of Alameda County.

As to the claimed negotiations and investigation leading to the loan, Infinite's complaint alleged as follows: "The Plaintiff is a single purpose limited liability company, and its only asset is the Property. The Plaintiff has no other source of income. As an integral part of the due diligence in successfully processing and funding the loan, the Defendant verified the accuracy of the gross rental income of the Property and also verified the various categories of expenses of the Property by requiring the Property seller to provide that data to the Defendant. The Defendant knew that the

---

[2]     The facts are taken from Infinite's complaint.

[3]     We say apparently because the note attached as Exhibit A to the complaint is unsigned.

only asset of the Plaintiff was the Property and the only income of the Plaintiff derived from the rent paid by the tenants of the Property. The Defendant analyzed the location of the Property and determined the Property was in a desirable location. The Defendant analyzed all the data to make sure that rental gross income after meeting the expenses, with the remainder funds, was more than adequate to fulfil the monthly loan payments under the Note, including payments of interest and principal. The Defendant has deep understanding of real estate lending, including the risks and benefits of financing the purchase of real property, including the Property. The Defendant relied primarily on the rental income from the Property, the location of the Property, and the condition of the Property to qualify the Property as adequate collateral, and for the Plaintiff to make the payments under the Note."

The COVID-19 pandemic occurred in 2020, the effect of which was governmental action by federal, state, and local government that, in Infinite's words, "declared health emergencies, and thus acquired broad powers under the emergency regulations, and put in place new regulations restricting evictions and imposing rent a [*sic*] moratorium . . . ."

Infinite apparently made its loan payments for some years, until March 2023, when it stopped making payments on the note.[4]

On August 4, 2023, Chase recorded a "Notice of Default and Election to Sell Under Deed of Trust" in the official records of the Alameda County Recorder's Officer, which, Infinite alleged, was "inexorably moving toward a nonjudicial foreclosure." And Infinite filed this lawsuit.

---

[4] It would develop that Infinite had apparently failed to pay property taxes for tax years 2020–2021, 2021–2022, and 2022–2023.

3

**The Lawsuit**

On October 31, 2023, Infinite filed a complaint against Chase for what it referred to on the face sheet as "1. Declaratory Relief" and "2. Preliminary Injunction." The declaratory relief claim requested a declaration that: (1) "Plaintiff's obligations under the Note and Deed of Trust [were] suspended from the start of the Moratorium and continuing during such time that the effects of the Pandemic and the Moratorium prevent or delay the Plaintiff from collecting rent from tenants"; (2) "Plaintiff is not in breach of the terms of the Note or the Deed of Trust"; and (3) "The Bank may not declare a default under the Note and Deed of Trust."

The essence of Infinite's claim would be distilled by the trial court as follows:

"An act of God in the form of the Covid-19 pandemic struck which resulted in the City of Oakland and County of Alameda issuing orders prohibiting evictions for nonpayment of rent as well rent increases . . . .

"As a result of the orders, nonpaying renters could not be evicted and replaced with those who would pay rent. This made it impossible and impractical for Infinite Glow to make payments on the loan or property tax . . . .

"Without the rents plaintiff had no funds to make payments on the Note . . . . Its only asset was the subject property . . . .

"On August 4, 2023, Chase declared a default and recorded a Notice of Default . . . .

"The Pandemic was an 'Act of God,' and an 'irresistible superhuman' cause, that made it impossible or impractical to pay the note. Reference was made to California Civil Code . . . sections 1511, 1932, and 3531 . . . ."

We assume Chase filed an answer (though none is in the record), for at some point, apparently in 2024, Chase moved under Code of Civil Procedure

4

section 638 for a referee. The motion was granted and the trial court appointed the Honorable Kevin J. Murphy (Ret.) as referee.

On March 4, 2025, Infinite filed a motion requesting that the case be stayed because it had initiated bankruptcy proceedings. Because of the bankruptcy action, Chase's foreclosure action against Infinite was already stayed, and Infinite's motion to stay was denied.

On April 4, Chase filed a demurrer, which filing included a memorandum of points and authorities and a request for judicial notice.

Infinite did not file a written opposition to the demurrer but was allowed to orally argue at the hearing, which was held on May 2.[5]

On May 5, Judge Murphy filed his decision, holding for Chase.

On July 26, judgment was entered dismissing the action, from which Infinite filed a notice of appeal.

## DISCUSSION

**Introduction**

Infinite has filed a brief in this court that does not contain a section entitled "argument." Rather, after setting forth what it claims is the standard of review and what it calls "Statement of Case and Facts Supporting the Appeal," the brief goes on to assert that this is a case of first impression and that "Civil Code sections 1511 and 3531 and the doctrine of impossibility or impracticability favor Infinite."[6]

---

[5]     Infinite's appellant's appendix includes what it calls "Opposition to Demurrer—outline of argument to Judge Murphy." It is not filed-stamped and, according to Chase, it was not served.

[6]     Infinite also relied on section 1932 and the doctrine of frustration to support its declaratory relief cause of action. Infinite does not argue section 1932 on appeal.

5

Infinite is wrong on all counts: nothing about this case is one of first impression, and neither section 1511 nor section 3531 excuses its non-performance.

**Demurrers and the Standard of Review**

We recently confirmed the law in *Fox Paine & Co., LLC v. Liberty Mutual Ins. Co.* (2024) 104 Cal.App.5th 1034, 1044–1045, review granted December 11, 2024, S287404:

"We set forth the governing principles in *Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 480: ' " 'Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiffs' [third] amended complaint. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]' " [Citation.] We likewise accept facts that are reasonably implied or may be inferred from the complaint's express allegations.' [Citations.] " ' "A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff the opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment.' " '

"In 2021, we added this: 'We also assume the attachments to the complaint are true, and they take precedence over any conflicting allegations in the [complaint]. [Citation.] [¶] Finally we "will affirm if there is any ground on which the demurrer can properly be sustained, whether or not the trial court relied on proper grounds or the defendant asserted a proper ground in the trial court proceedings." ' (*George v. eBay, Inc.* (2021) 71 Cal.App.5th 620, 628 (*George*).)

" 'Although we review the complaint de novo, " '[t]he plaintiff has the burden of showing that the facts pleaded are sufficient to establish every element of the cause of action and overcoming all of the legal grounds on which the trial court sustained the demurrer, and if the defendant negates any essential element, we will affirm the order sustaining the demurrer as to the cause of action.' " ' (*Kahan v. City of Richmond* (2019) 35 Cal.App.5th 721, 730 (*Kahan*).)"

### The Law of Declaratory Relief

Code of Civil Procedure section 1060 provides in pertinent part that declaratory relief is proper as to a contract "in cases of actual controversy relating to the legal rights and duties of the respective parties." That said, "[a] trial court may properly sustain a general demurrer to a declaratory relief action without leave to amend when . . . the controversy presented can be determined as a matter of law." (*City of Fresno v. California Highway Com.* (1981) 118 Cal.App.3d 687, 699–700.) And thus have many declaratory relief cases ended by demurrer. (See, e.g., *City of Lancaster v. Netflix, Inc.* (2024) 99 Cal.App.5th 1093, 1114 ["[A] declaratory relief claim is subject to general demurrer where it relates to a substantive claim that is invalid as a matter law"]; *Childhelp, Inc. v. City of Los Angeles* (2023) 91 Cal.App.5th 224, 236 [affirming demurrer without leave to amend where declaratory relief cause of action failed as a matter of law].) Likewise, Infinite's case here.

We start with section 1511, the first of the Code sections cited by Infinite here in support of its excuse for non-payment.

**Section 1511 Does Not Apply**

Section 1511—which Infinite cites but whose language it hardly addresses—provides that non-performance of a contract is excused in three circumstances:

"1.  When such performance or offer is prevented or delayed by the act of the creditor, or by the operation of law . . . ;

"2.  When it is prevented or delayed by an irresistible, superhuman cause . . . ; or

"3.  When the debtor is induced not to make it, by any act of the creditor intended or naturally tending to have that effect, done at or before the time at which such performance or offer may be made, and not rescinded before that time."

Infinite invokes the first two subdivisions of section 1511, that its performance was "prevented or delayed . . . by the operation of law," and that its performance was "prevented or delayed by operation of law or an irresistible, superhuman cause."  Neither applies.

Infinite fails to cite to any law that "prevented or delayed" it from making its payments under the loan.  While the various ordinances and rules prohibited landlords from evicting tenants for overdue rent, they did not make it illegal for tenants to pay—or for Infinite to make its mortgage payments.  In fact, Infinite admits that its tenants were "still obligated to pay back rent" and that rent collection efforts did not cease.  In short, no "law" prevented Infinite from doing anything.

Not only that, Infinite's position is belied by its own conduct, as Infinite apparently made loan payments for the first two years of the COVID-19

8

pandemic, apparently first missing a payment in March 2023. COVID-19 prevented nothing.

And as to the second provision in section 1511—"irresistible, superhuman cause," Infinite does cite a case that it describes as the court "agree[ing] with the defendant that the 'irresistible, superhuman cause identified by [defendant] here is the COVID-1 pandemic.'" That case was *SVAP III Poway Crossings, LLC v. Fitness Internat., LLC* (2023) 87 Cal.App.5th 882 (*SVAP*), which held against the defendant. All Infinite says is that it "alleges" its performance was prevented by "the irresistible superhuman cause of Covid 19," citing nothing in claimed support.

We turn to section 3531, to which Infinite devotes the bulk of its brief.

**Section 3531 Does Not Apply**

Section 3531 provides in its entirety that "[t]he law never requires impossibilities." Infinite has not shown such impossibility here.

We recently had occasion to address the subject of impossibility in *Cleare v. Superior Court* (2026) 119 Cal.App.5th 566, there, in the context of whether the school district had demonstrated impossibility in staffing its classrooms. Holding "no," we said this: "Impossibility is in the nature of an affirmative defense and, as such, up to the party claiming it to prove. (E.g., Evid. Code, § 500; *Abrams v. Motter* (1970) 3 Cal.App.3d 828, 839; *Rench v. Watsonville Meat Co.* (1956) 138 Cal.App.2d 482, 489.) This burden of proof required the District to establish that all lesser options had been tried and found wanting. (See *Lloyd v. Murphy* (1944) 25 Cal.2d 48, 54.) As one court tersely put it in point-blank fashion: '[W]e cannot say that it is impossible until it has been tried.' (*Board of Supervisors v. McMahon* (1990) 219 Cal.App.3d 286, 301.)" (*Cleare v. Superior Court*, *supra*, 119 Cal.App.5th at p. 577.)

9

Infinite certainly has not pled such exhaustion, that it did all it could to pay the loan, for example, attempting to obtain other investors, refinance, or using its members' assets—nothing.

But even if Infinite could make such pleading, it would not support its position that its financial condition made it "impossible" to perform. California law holds that one's performance is excused only in extraordinary circumstances where performance truly cannot be done, not where it has merely become harder or more expensive, as we ourselves held in *Kashmiri v. Regents of the University of California* (2007) 156 Cal.App.4th 809, 836. There, we rejected the University's claim of impossibility, in language applicable here: "economic crises do not excuse performance on a contract. 'Facts which may make performance more difficult or costly than contemplated when the agreement was executed do not constitute impossibility.' [Citation.] Thus, the fiscal problems experienced by the University did not excuse its performance." (Fn. omitted; see also *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 154.)

The post-COVID-19 cases are no different, several courts rejecting attempts to excuse payments based on COVID-19-related restrictions. They include: *SVAP, supra,* 87 Cal.App.5th at page 894; *KB Salt Lake III, LLC v. Fitness Internat., LLC* (2023) 95 Cal.App.5th 1032, 1058–1059; and *West Pueblo Partners, LLC v. Stone Brewing Co., LLC* (2023) 90 Cal.App.5th 1179, 1188–1190 (*West Pueblo*).

*SVAP* is illustrative. There, plaintiff landlord sued its tenant that operated a fitness facility for breach of contract based on the tenant's non-payment of rent. (*SVAP, supra,* 87 Cal.App.5th at p. 886.) The trial court granted plaintiff's motion for summary judgment. (*Id.* at p. 888.) Defendant

10

appealed, contending that the trial court erred because its obligation to pay rent was excused due to the COVID-19 pandemic and resulting government orders prohibiting it from operating its fitness facility for several months, specifically contending that its obligation to pay rent was excused based on: (1) plaintiff's own material breach of the lease; (2) the force majeure provision in the lease; (3) section 1511; (4) the doctrines of impossibility and impracticability; and (5) the doctrine of frustration of purpose.  (See *SVAP*, at p. 890.)

The Court of Appeal affirmed, and addressing "impossibility and impracticability," said this:

"According to Fitness, our analysis should focus not on its ability to perform its obligation to pay rent, but instead on the *object* of the contract, as that is what became impossible.  Fitness seems to be conflating impossibility with frustration of purpose, but in any event provides no support for this argument.  Case law addressing the doctrine of impossibility almost invariably refers to impossibility of *performance*, and the question to be decided is whether the party asserting the defense has demonstrated that it was impossible to perform its own contractual obligations to the other contracting party such that it may avoid liability for its nonperformance. [Citations.]  Nothing about the pandemic or resulting closure orders has made Fitness's performance of its obligation to SVAP—paying rent— impossible.  And '[t]here is no impossibility of performance where one party has rendered services as agreed and nothing remains for the other party to do but pay the agreed compensation.'  [Citation.]  The doctrine of impossibility therefore does not apply here." (*SVAP*, *supra*, 87 Cal.App.5th at pp. 893– 894.)

Our decision is *West Pueblo* is similar. Stone Brewing, a tenant of West Pueblo Partners, did not pay rent for several months during the COVID-19 pandemic, and West Pueblo Partners sued for unlawful detainer. The tenant argued it was excused from paying rent because COVID-19 regulations and business interruptions triggered a force majeure provision in its lease. (*West Pueblo*, *supra*, 90 Cal.App.5th at pp. 1181–1184.) The trial court granted the landlord's motion for summary judgment. (*Id.* at pp. 1184–1185.) We affirmed, holding that the trial court correctly interpreted the force majeure provision, that the COVID-19 closure orders did not delay, interrupt, or prevent the tenant's timely performance under the lease. (*Id.* at p. 1188.)

Infinite asserts that these cases are "inapplicable," apparently for four separate reasons: (1) the cases involved agreements with force majeure provisions;[7] (2) the defaulting parties in those cases had greater resources with which to pay; (3) the cases involved leases, not a loan; and (4) the cases were decided on summary judgment, not demurrer.

We do not understand the force majeure argument as, if anything, the absence of a force majeure provision in the loan documents cuts against Infinite. Absent an express contractual risk-shifting provision, Infinite must satisfy both the statutory and common law standards to excuse its performance of its payment obligations. (*West Pueblo*, *supra*, 90 Cal.App.5th at p. 1188 [standard for applying a force majeure provision in a contract derives from the doctrines of impossibility and impracticability].) In any

---

[7] We recently described force majeure this way: "Force majeure is a French term meaning 'superior force' and has its origins in the early law of 'impossibility. (See generally 1 Witkin, Summary of Cal. Law (11th ed. 2025) Contracts, § 853.) It was, the author says, 'the principal impossibility defense.' (*Ibid.*)" (*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland* (2025) 112 Cal.App.5th 519, 545.)

event, while the cases involved contracts containing force majeure provisions, those cases independently addressed—and rejected—COVID-19 based excuses under section 1511 and the general doctrines of impossibility and impracticability.

Infinite's other three reasons are equally unpersuasive, for the simple reason that, as *SVAP* summed up, Infinite's obligation was "to pay." That was it, and it does not matter if the payment was on a lease or a loan. Nor does it matter whether Infinite lacked the financial ability to make the loan payments, as California law is clear that a party's financial incapacity or hardship is insufficient to excuse an obligor from its contractual payment obligation. Here, Infinite alleges only that it "cannot collect the past rent" and "could not collect enough rent to make the monthly payments under the Note." That is economic hardship, not impossibility.

And as to the setting in which the cases were decided—there, on summary judgment, here, on demurrer—the cases turned on the pandemic and related government orders can excuse a contractual obligation to pay money under doctrines such as force majeure, impossibility and impracticability, or sections 1511 and 3511, which are pure questions of law. And, as noted, if the claim fails as a matter of law, dismissal on demurrer is appropriate. (See *City of Lancaster v. Netflix, Inc., supra,* 99 Cal.App.5th at p. 1114; *Childhelp, Inc. v. City of Los Angeles*, *supra*, 91 Cal.App.5th at p. 236; *City of Fresno v. California Highway Com., supra,* 118 Cal.App.3d at pp. 699–700.)

Unable to find any California cases supporting it, Infinite relies on an Illinois case it describes as being "cited to" in our *West Pueblo* opinion: *In re Hitz Restaurant Group* (Bankr. N.D. Ill. 2020) 616 B.R. 374 (*Hitz*). "Cited to" may be one way to refer to our reference to *Hitz*. The fact is, we described

13

*Hitz* as "distinguishable" (*West Pueblo*, *supra*, 90 Cal.App.5th at p. 1189). As indeed it is. As we put it: "We find *Hitz* distinguishable on its facts. *Hitz* involved a special purpose entity that ran a single restaurant that had already been placed into bankruptcy at the time of the litigation. (*Hitz*, *supra*, 616 B.R. at p. 376.) There was thus no dispute as to the 'Debtor's inability to pay rent,' which the court acknowledged. (*Id*. at p. 377, italics added.)" (*West Pueblo*, *supra*, 90 Cal.App.5th at p. 1189.)

As noted, Infinite's complaint also sought a preliminary injunction, which was dismissed by the trial court. Infinite's brief does not even address the issue, its argument referring only to the claim for declaratory relief. While we thus need not say anything more, we do add that "[a] preliminary injunction is an interim remedy designed to maintain the status quo pending a decision the merits," and "is not, in itself, a cause of action." (*MaJor v. Miraverde Homeowners Assn.* (1992) 7 Cal.App.4th 618, 623.) Thus, "a cause of action must exist before injunctive relief may be granted." (*Ibid*.; accord, *Shell Oil. Co. v. Richter* (1942) 52 Cal.App.2d 164, 168.) Here, Infinite's request for an injunction is derivative of its substantive claim under sections 3531 and 1511 and the doctrines of impossibility and impracticability. Because that claim fails as a matter of law, Infinite lacks the requisite predicate cause of action to support injunctive relief.

Finally, we note that the demurrer was sustained without leave to amend, this on Infinite's first complaint. As noted, Infinite filed no opposition below, and we do not know if it requested leave to amend at the hearing, as there is no reporter's transcript in the record. And its brief does not make any request for leave to amend, though it does state that it "can amend the Complaint to allege that it was not possible to sell assets, refinance, or to take out additional loans in order to make payments." But

14

the law imposes on plaintiff the burden of showing a reasonable possibility that the defect in the pleading can be cured by amendment. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.) Infinite has not done that here. Even assuming such conclusory assertions would be satisfactory to plead exhaustion, they would still not be sufficient to allege impossibility under California law, as noted above. (See *Kashmiri v. Regents of the University of California, supra*, 156 Cal.App.4th at p. 836; *Glendale Fed. Sav. & Loan Assn. v. Marina View Heights Dev. Co., supra*, 66 Cal.App.3d at p. 154.)

## DISPOSITION

The judgment is affirmed. Chase shall recover its costs on appeal.

_____

RICHMAN, J.

We concur.

_____

STEWART,  P. J.

_____

DESAUTELS, J.

(A174415N)

16